## BANKERS TRUST COMPANY v. BRADFIELD.

1. APPEAL AND ERROR—EXECUTORS AND ADMINISTRATORS—ACCOUNTING—ASSUMED NAMES.

   In administrator's suit for declaration of ownership and accounting as to four restaurants, claimed by defendants, *de novo* review of the testimony *held*, to require concurrence in conclusion of trial judge that deceased was the owner of the restaurants in question at time of his death and that such conclusion was not, under record presented, inconsistent with the provisions of the assumed name act under which the businesses were conducted (2 Comp. Laws 1929, § 9825 *et seq.*, as amended).

2. NAMES—PURPOSE OF ASSUMED NAME ACT.

   The purpose of the assumed name statute is "to inform the public with whom it is dealing, and thereby serve its convenience and to prevent imposition and fraud" (2 Comp. Laws 1929, § 9825 *et seq.*, as amended).

3. APPEAL AND ERROR—QUESTIONS OF FACT—EVIDENCE.

   While the Supreme Court hears chancery cases *de novo*, it does weigh all the evidence, recognizing that in disputed questions of fact, the trial court has an advantage in being able to observe personally the conduct of the witnesses, and should not reverse decrees of the trial court unless persuaded that they are not in accordance with the just rights of the parties.

4. SAME — QUESTIONS REVIEWABLE — ACCOUNTING — PRINCIPAL AND AGENT—TRUSTS—EVIDENCE.

   In administrator's suit for declaration of ownership and accounting as to four restaurants, brought against parties

REFERENCES FOR POINTS IN HEADNOTES
[2] 38 Am. Jur., Name, § 14.

claiming to own such places of business, questions as to law of agency and the law of trusts are not considered, where based on false premise that deceased was an employee of defendants, when the facts show the situation was just reversed.

Appeal from Wayne; Maher (Thomas F.), J. Submitted January 11, 1949. (Docket No. 64, Calendar No. 44,277.) Decided April 11, 1949. Rehearing denied May 18, 1949.

Bill by Bankers Trust Company, administrator of the estate of Horace Stephen Ferguson, deceased, and Annie Marie Ferguson against Mary E. Bradfield and others to establish the ownership of certain restaurants in the estate of Horace Stephen Ferguson, deceased. Decree for plaintiff. Defendants appeal. Affirmed.

*Francis J. McDonald* and *Arthur A. Ude,* for plaintiffs.

*Alonzo D. Pettiford* (*Carl R. Johnson* and *Donald B. Frederick,* of counsel), for defendants.

BUSHNELL, J. This is an appeal from a decree entered upon the findings of the trial judge, that at the time of his death, October 12, 1945, Horace Stephen Ferguson was the sole owner of 4 restaurants in the city of Detroit, commonly known as St. Louis Lunch, 1721–1723 St. Antoine street, No Tipping Lunch, 4868 Beaubien street, Evergreen Lunch, 2641 Hastings street, and Housewife's Lunch, 5700 John R. street.

Defendants, Mary E. Bradfield, Blanch McCall, Florence (Floreine-Flora) Crosby (Walker), Melzetta C. Gamble, and Nora McDonald, were directed in the decree to surrender forthwith to plaintiff Bankers Trust Company, of Detroit, administrator

of Ferguson's estate, the possession of these restaurants and all property appertaining thereto. The defendants were also ordered to pay to the administrator all funds in their hands which they had received by reason of the sale of one of the restaurants and rental of another. Defendants were also ordered to account to the administrator, surrender to it the personal property of Ferguson, and execute such assignments as might be necessary to carry out the terms of the decree. No relief was granted to Ferguson's widow who had been added to the cause as a party plaintiff. The following is quoted from the trial judge's opinion:

"Voluminous records were offered by the defendants showing that all of the restaurants were operated in the names of the various defendants. The defendants further contend that Horace S. Ferguson, deceased, was merely their manager and operated these restaurants for their benefit. However, the testimony shows that these defendants were not the owners of these restaurants. Mr. Horace S. Ferguson, the deceased, operated them as. his own property, made withdrawals from the bank accounts at will, and at no time during his life did any of the defendants attempt to operate any of these restaurants in the manner that an owner would, or assert any rights of ownership. Their connections with the restaurants were merely that of employees.

"The widow of Horace S. Ferguson testified that it had been a common practice for her husband to operate his business in the names of other people and that it seemed to be a 'phobia' with him."

Appellants argue that the court erred in ignoring certain county, State and Federal records which were offered as proof of their ownership. They contend that no valid proof of the decedent's ownership was offered, and that the conclusion reached

by the trial judge is not supported by the preponderance of the evidence. They further assert that Ferguson was but an agent and trustee and that defendants are the true and lawful owners of the restaurants in question.

From 1916 until his death in 1945, Ferguson either owned or operated a hotel and a number of restaurants in the city of Detroit and elsewhere. In 1916, then unmarried, he entered into an agreement with defendants Gamble, McDonald and Bradfield, from which the following is quoted:

"(1) That they employ and maintain the services of Horace S. Ferguson as general manager of the restaurants located at 286 Beaubien St., 287 St. Antoine St., 465 St. Antoine St., also all cafe, lunch rooms, pavilions and hotels that the party of the first part do now, or may hereafter, operate, for the consideration of 10 per cent. of the net profits accruing from the earnings of all present and future places of establishment of the said first party and managed by the said Horace S. Ferguson.

"(2) It is expressly agreed that the said Horace S. Ferguson shall do all buying, pay all bills, countersign all checks and negotiate all business for the benefit of the St. Louis Lunch Company.

"(3) The said Horace S. Ferguson is authorized to make any improvements that he may deem beneficial to the business and interest of the party of the first part, provided such improvements be in accordance and keeping of any and all parts of this agreement.

"(4) The St. Louis Lunch Company reserves the right to audit the books of said places at any time they may elect; to employ or discharge any employee in any of the said places, at any time it may be thought best for the party of the first part.

"(5) This agreement shall be effective for a period of 10 years, beginning September 16, 1916, to September 16, 1926, provided, that, the said second

party shall not default in any of the articles of this agreement.

"(6) It is further agreed by and between the parties aforesaid, that the said Horace S. Ferguson shall receive the above mentioned 10 per cent. commission, as heretofore provided, each and every two weeks and may deduct such amounts from the earnings of the daily profits as may be necessary, by recording the same."

Three of the defendants rely upon this agreement; all of them rely upon certificates showing the registration of the restaurants in their respective names under the provisions of the assumed name act, 2 Comp. Laws 1929, § 9825 *et seq.*, as amended (3 Comp. Laws 1948, § 445.1 *et seq.* [Comp. Laws Supp. 1940, § 9825 *et seq.*, Stat. Ann. § 19.821 *et seq.*]), and four of them claim to have made an initial investment of $200 each. They all rely on certain unemployment compensation reports, sales tax payments, bank accounts in their names, and Ferguson's income tax returns as proof of their claims of ownership.

After his marriage in 1922, Ferguson's wife, for a while, actively assisted in the operations of two restaurants in Chicago as well as the ones in Detroit. Mrs. Ferguson, in response to the question, "Did you ever know that he had registered these businesses in some other people's names?" answered as follows:

"Oh, yes; even in his lawyer's name, Mr. Pettiford, Oxford Mulky, and Helen Davis, a whole lot of people, Miss Mary Green, a lot of them. Even my furniture in my home is not listed in our own name. My car is not listed in my name. My husband had a phobia, or you could call it eccentric, that is what I call it, eccentric, and he was just afraid to put anything in his name. Even one of our homes was listed in Mrs. Walker's name."

The testimony shows that Ferguson employed, paid, and discharged the help, paid the rent, telephone, gas bills, et cetera, and took leases in his own name on the premises occupied by the restaurants, and that no one asserted any authority over his activities or gave him any orders in or about these establishments.

Defendant Blanch McCall was on the relief rolls in Pittsburgh in 1937, when Ferguson brought her to Detroit and gave her employment at the St. Louis Lunch at $5 per week. She claims ownership of the Evergreen Lunch which Ferguson opened in 1938; and yet from 1940 to 1942 she worked at the Housewife's Lunch as a cashier and wore the usual restaurant uniform. Her explanation of this inconsistent action was that she wanted to work at the Housewife's Lunch in order to be near her son who was going into the army. However, he did not enter the service until two years later. She never invested any money in the Evergreen Lunch, and the record shows that its fixtures were purchased by Ferguson.

Mary Bradfield claims to be the owner of the No Tipping Lunch, but was unable to say how much of her personal funds went into its purchase; nor did she know how the fixtures were obtained. Her explanation was that her husband looked after her affairs; and yet in a letter she wrote to Ferguson from Denver in 1917 or 1918, she addressed him as "Uncle" and said: "Hope your business continues to improve and that you secure the necessary help."

Florence Walker, who claims to own the Housewife's Lunch, worked at the St. Louis Lunch from 1916 until Ferguson's death in 1945, as cashier, waitress and bookkeeper. She was paid a salary of $35 per week and listed as an employee on the social security returns, and admitted that she never participated in any of the profits of the business. Her

explanation is that the profits were kept in the business.

Melzetta Gamble and Nora McDonald, who are sisters, never worked in any of the lunch rooms, nor did they receive any profits therefrom, and apparently knew nothing of their financial condition. Nevertheless, they also claim an interest in the St. Louis Lunch. The testimony shows that Nora McDonald was on the public relief rolls from 1925 to 1942 and received aid for dependent children from the State of Michigan. She admitted that she never attempted to determine whether there were any profits in the business in which she might share.

Three disinterested witnesses, Ruth Edwards, Mildred Rivers, and Robert H. Winters, all of whom were employed in the restaurants for periods varying from 3 to 27 years, testified to circumstances which indicate that Ferguson was the sole owner.

In their answer to the administrator's bill for declaration of ownership and an accounting, and the bill of Annie Marie Ferguson, the widow, for appropriate relief, appellants answered on the theory that the St. Louis Lunch was established by them and began to operate with their joint funds, and that the other lunch rooms were established out of the profits of the St. Louis Lunch. Although they admit that Ferguson, who they contend was their uncle, had had wide experience in the restaurant business, they assert that he acted only as manager, was paid on a percentage basis, and held the leases to the restaurants in trust for each individual owner thereof.

Our review of the testimony *de novo* requires agreement with the conclusion of the trial judge that Ferguson was the owner of the four lunch rooms in question at the time of his death. Nor is this conclusion, in the light of the record before us, inconsistent with the provisions of the assumed name statute, *supra*.

As stated in *Maurer* v. *Greening Nursery Co.*, 199 Mich. 522, the obvious purpose of the statute is "to inform the public with whom it is dealing, and thereby serve its convenience and to prevent imposition and fraud." See, also, *Winget* v. *Grand Trunk Western Railway Co.*, 210 Mich. 100, and *Phillip* v. *Post,* 308 Mich. 609.

As stated in *Re George L. Nadell & Company, Inc.*, 294 Mich. 150:

"We hear chancery cases *de novo. Petz* v. *Gaines,* 286 Mich. 450. It is our duty to weigh all the evidence and to reach an independent conclusion. *Hawthorne* v. *Dunn,* 210 Mich. 176. We recognize that in disputed questions of fact, the trial court has an advantage in being able to observe personally the conduct of the witnesses. Such observations are oftentimes of value in giving some weight to the findings of the trial court, *Metropolitan Life Ins. Co.* v. *Stewart,* 280 Mich. 24, but in such cases the finding of facts by the lower court is not controlling. *Snider* v. *Schaffer,* 276 Mich. 92.

"In *Langdell* v. *Langdell,* 285 Mich. 268, we said:

" 'We hear chancery cases *de novo;* but we do not, and should not, reverse decrees unless we are persuaded they are not in accordance with the just rights of the parties.'

"In the case at bar, there was competent testimony to support the finding of the trial judge and we cannot upon this question of fact hold that the weight of evidence is contrary to the court's finding."

We cannot on this record say that the findings of the trial court were not in accord "with the just rights of the parties."

Questions raised by appellants which have to do with the law of agency and the law of trusts are beside the point, as those questions are based upon the false premise that Ferguson was in the employ

of defendants, when the facts show that the situa-
tion was just reversed.

The decree of the trial court is affirmed, with costs
to appellees.

SHARPE, C. J., and BOYLES, REID, NORTH, DETH-
MERS, BUTZEL, and CARR, JJ., concurred.