PRUDENTIAL INSURANCE COMPANY OF
AMERICA *v.* CUSICK.

1. INSURANCE—INFORMATION IMPARTED BY APPLICANT TO AGENT IM-
PUTED TO INSURER.
Essential information imparted by an applicant for life in-
surance to the agent of the insurer will be imputed to the
insurer.

2. APPEAL AND ERROR—CHANCERY CASES—DE NOVO REVIEW—BURDEN
OF PROOF.
A hearing *de novo* in an equity suit required that there be a
hearing afresh by the Supreme Court and if upon the exercise
of independent judgment required of the Supreme Court, it
appears the appellant has not sustained his burden of proof,
either affirmance or remand for more proof should be ordered,
although due consideration is given to the findings of the
trial judge.

3. EVIDENCE—NONPRODUCTION—PRESUMPTION AS TO AVAILABILITY.
A party within whose reach it may fairly be presumed there is
evidence which he does not produce may not complain if the
court, in considering what is produced, does not find it as
full and satisfactory as he supposed, or extend it by construc-
tion to meet a defense that might have been proven.

4. WITNESSES—FAILURE TO CALL—INFERENCES.
An unfavorable inference obtains against a party who fails to
call a knowledgeable witness controlled by him.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 29A Am Jur, Insurance §§ 1019–1024.
[2] 5 Am Jur 2d, Appeal and Error § 703.
[3] 20 Am Jur, Evidence §§ 183–193.
[4] 20 Am Jur, Evidence §§ 187–189.
[5] 29 Am Jur, Insurance §§ 420–422.
   29A Am Jur, Insurance §§ 1884, 1885, 1891.
[6, 10] 29A Am Jur, Insurance §§ 1925, 1950.
[7] 14 Am Jur Courts §§ 131–135.
[8] 19 Am Jur, Equity § 408 *et seq.*
[9] 5 Am Jur 2d, Appeal and Error §§ 545, 548 *et seq.*

5. INSURANCE—CANCELLATION OF POLICY—FRAUD—INTENT—RISK.

An insurer which relies upon a claim of actual intent to deceive or upon a materially affected risk or hazard in order to cancel a life insurance policy must prove actual falsity of representation by the deceased applicant.

6. SAME — CANCELLATION OF POLICY — CONSTRUCTIVE FRAUD — EVIDENCE.

Question as to whether or not plaintiff insurer in suit to cancel $1,000 life insurance policy had established constructive fraud of insured in latter's application *held,* to have been inadequately submitted for determination for lack of testimony of the soliciting insurance agent who had recommended the insurer's acceptance of the application and who had filled in the answers thereon.

7. COURTS—OPINION.

The opinion and decision of a court must be read and examined as a whole in the light of the facts upon which it was based.

8. EQUITY—RECORD—PRESENTATION OF COUNSEL.

Courts of equity are supposedly and exclusively governed by principles of equity, aided but not controlled by the presentations of counsel, and to enter or uphold that decree which in conscience is right upon the whole record, no matter what points of law or fact counsel may stress.

9. APPEAL AND ERROR—QUESTIONS REVIEWABLE.

The general rule that a question may not be raised for the first time on appeal to the Supreme Court is not inflexible, for when consideration of a claim sought to be raised is necessary to a proper determination of the case, such rule will not be applied.

10. INSURANCE—CANCELLATION OF POLICY—FRAUD—REMAND FOR ADDITIONAL EVIDENCE.

Suit by insurer to cancel $1,000 life insurance policy on ground of fraud in application for failure to disclose recent removal of mole on back together with biopsy report that tissue was cancerous is remanded for purpose of taking testimony of soliciting agent as to what had been disclosed to him and of insured's mother who was present during a part of the time the agent was filling out the application, in order to make final determination in this Court.

CARR, C. J., and DETHMERS and KELLY, JJ., dissenting.

Appeal from Wayne; Bohn (Theodore R.), J. Submitted June 6, 1962. (Calendar No. 7, Docket No. 49,057.) Decided February 7, 1963.

Bill by the Prudential Insurance Company of America, a New Jersey Corporation, against Dorothy A. Cusick to cancel life insurance policy, in which she was named beneficiary, because of misrepresentations by the insured. Cross-bill asking payment of benefits. Decree for defendant. Plaintiff appeals. Reversed and remanded for additional testimony with jurisdiction of Supreme Court retained.

*Dickinson, Wright, McKean & Cudlip (Wellington M. Watters,* of counsel), for plaintiff.

*Jerry P. D'Avanzo,* for defendant.

KELLY, J. (*dissenting*). May 14, 1956, Jeannine M. Cusick, a 20-year-old single woman, submitted an application to plaintiff for $1,000 of insurance, naming her mother, defendant herein, as beneficiary. May 21, 1956, plaintiff issued the policy of insurance. Defendant suggested to her daughter that she submit the application, as an earlier endowment policy with plaintiff had recently matured.

Five months later (October 21, 1956) Miss Cusick died of cancer of the brain.

The following questions and answers were contained in the application:

"19. Has person proposed consulted or been treated by a doctor or other practitioner or at a dispensary or clinic within past 5 years?

"No.

"20. Has person proposed had any injury, illness or operation within past 10 years?

"Yes. * * *

"22. Has person proposed ever had: * * * tumor * * * cancer * * * (The list includes a number of other ailments not pertinent here).

"No. * * *

"24. Give full details for questions 14–23 if answered 'yes.' Include dates of commencement and recovery from illnesses and number of attacks.

"(Answer) Tonsillectomy Dec. 27, 1948—Hospitalized 2 days—full recovery—no complication."

The application also contained the following statement:

"I hereby declare that all statements and all the answers to the above questions are complete and true, and I agree that the foregoing, together with this declaration, shall constitute an application for insurance."

Claim for payment of proceeds on the policy was denied and plaintiff filed its bill of complaint, with tender of premiums, seeking cancellation of the policy, claiming that constructive and/or actual fraud practiced upon it by "various misrepresentations" were made in the application "with intent to deceive the plaintiff and/or which materially affect the risk and hazard assumed by the plaintiff."

Appellant appeals claiming the court erred in finding that plaintiff did not make out a case of constructive or actual fraud entitling it to a decree canceling its policy.

When the policy was issued (May 21, 1956), CL 1948, § 522.17 (Stat Ann 1943 Rev § 24.280) provided:

"The falsity of any statement in the application for any policy covered by this chapter shall not bar the right to recovery thereunder unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer."

In early 1954, after having graduated from high school, Miss Cusick was employed as a medical assistant by Dr. Wikiera, a practicing dermatologist, of Dearborn, Michigan, and assisted him in prepar-

ing patients for examination and also surgical procedures.

Dr. Wikiera testified that Miss Cusick worked for him approximately 2 years and was a very intelligent girl who acquired knowledge of the language of his profession; that she asked him to examine a lesion she had noticed was changing color, becoming redder and darker, and, upon examination, he thought it best to remove it immediately; that what he would describe as an operation was performed in his office the same day (June 8, 1955) and required about 15 minutes, and resulted in a cavity 2 to 3 inches long and 3/4 of an inch deep; that the operation required application of fresh dressings for a period of approximately 3 weeks, which was done either by Miss Cusick or her girl friends in the office; that she was able to leave the office after the operation and returned to work the next day; that he sent a tissue sample to the laboratory for analysis and on June 15, 1955, the laboratory sent him a written report[1]; that he was "unhappy" when he received the laboratory report; that he showed the report to Miss Cusick the same day he received it and she read it and not only discussed it with him but with the office girls; that "she was told, like all patients are told, that malignant melanoma can occur any time, I mean can metastasize at any time; and then we did hope that this excision was early enough that such complications would not arise"; that there

---

[1] "The sections of Miss Jeannine Cusick show an active junctional nevus with inflammatory infiltrate beneath the nevus cells nests. In the center of the lesion, there is a papule covered with thin epidermis and filled with nevus cells in very disorganized arrangement and greatly varying in size and shape with hyperchromatic nuclei being fairly numerous, and also with numerous mitosis. The base line of this lesion is sharp and smooth and there is some inflammatory infiltrate beneath. Conclusions: Histologically this is malignant melanoma developing in a junction type nevus. One has the impression that the lesion has not yet become really invasive, but of course with melanomas, one always must be afraid of distant metastasis even before invasions. The lesion seems to have been removed completely."

was no treatment to prescribe as there was nothing to do but wait and see; that he didn't remember whether he told her she had cancer but "I discussed the condition with her, the diagnosis with her, as a malignant melanoma. Now, we are using the word 'cancer' loosely here, and that denotes—I was speaking to her not as a layman. She knew something about medicine. She worked with me. She knew the word 'melanoma' much better than a person off the street"; that he called her father the same day he received the report and informed him that his daughter had cancer; "I discussed the problem with him; told him exactly what the biopsy read; the lesion, the melanoma was excised completely; but as far as the future was concerned, that was a matter of time; we would have to wait and see what happened.

Elizabeth Murphy, employed in May, 1956, by Dr. Wikiera, as the doctor's assistant and still so employed at time of trial, testified that shortly after she went to work for the doctor, Miss Cusick showed her the biopsy or laboratory report and told her about the operation Dr. Wikiera had performed; that when she told Miss Cusick that "the words were out of my vocabulary" she (Miss Cusick) "explained certain things to me * * * well, she told me that it meant that she had cancer"; that she "showed it (the report) to me on several occasions."

To establish its contention that the false statement materially affected the risk and hazard assumed by it, plaintiff offered uncontroverted proof from its underwriters that had they known of the operation for the removal of the cancerous tumor 11 months prior to the signing of the application they would have rejected it and they also expressed their opinion that similar action would have been taken by other life insurers.

Defendant called 3 witnesses, namely, the father and mother of deceased, and Dr. Sage.

Dr. Sage testified that Miss Cusick had been his patient since March, 1947; that when she showed him the mole he said, " 'Jeannine, you work for a dermatologist. He can advise you what to do about it.' I understand that she had had surgery and had the mole removed, and she told me that she was informed it had been removed *in toto,* and that it had been a melanoma. I did not see a report on the tissue"; that he began treating her at her home in August, 1956, for Bell's palsy because of paralysis of the face; that she was admitted to the hospital in September and, after hospitalization, she was in a semicomatose condition and couldn't carry on a conversation; that he called in Dr. Maguire, a neurosurgeon; that he did not know whether he informed Dr. Maguire that she had a melanoma removed, "but I had made the addition—made the notation on her charts, on her hospital records. * * * I think a day after she had been admitted I made that notation on her chart, that she had had a melanoma removed."

Dorothy Cusick, mother of deceased, testified that before her daughter had the mole removed she asked her permission or opinion, and "I advised her to call Doctor Sage and get his opinion on it, and he advised her to do so"; that she never discussed the matter with Dr. Wikiera until after her daughter's death; that her daughter never advised her that the mole was malignant and she did not discuss the operation with her.

Joseph Cusick, deceased's father, testified that Dr. Wikiera called him about 2 o'clock in the afternoon somewhere around the 14th or 15th of June, on the telephone, and "he said Jeannine thought her mother might be worried about this mole being removed, and he wanted to inform me that there was nothing to

worry about; that he did a very good job of removing it; that was all"; that they never talked further with the doctor until after Jeannine's death, and that his daughter at no time ever informed him that the mole was malignant.

The trial court denied plaintiff relief solely on the ground that plaintiff had failed to establish an intention to deceive on the part of Miss Cusick.

We disagree with that conclusion.

Appellee states: "All of the testimony abundantly established the fact that the deceased treated the excision of the mole as no more than a temporary ailment and attached no subsequent significance or importance to it."

No such conclusion can be reached unless we disregard the testimony of Dr. Wikiera and Elizabeth Murphy. A reading of the record convinces us that Dr. Wikiera had nothing but the most friendly feeling toward Miss Cusick. The only dispute in regard to his testimony was the testimony of Miss Cusick's father, who contradicted the doctor's testimony that he called the day he read the report to inform the father that his daughter had cancer. The father's version that the doctor called only to say that his daughter thought her mother would be worried does not square with the mother's version that she did not ask about the operation and her daughter did not talk to her about it. In addition to this, the doctor did not call Mr. Cusick until the laboratory report had been received, which was a week after the operation was performed.

There is not the slightest intimation in the record or brief that Elizabeth Murphy did not tell the truth when she testified that Miss Cusick told her she had cancer. If we believe Miss Murphy and also the testimony of the mother that her daughter did not advise her of the malignancy, what other conclusion can be drawn except that Miss Cusick, realizing the

gravity of the problem, decided to keep the saddening news from her mother?

Is it reasonable to conclude that when the application was filled out Miss Cusick remembered that a tonsillectomy was performed 5-1/2 years prior to the signing of the application and forgot that a malignant mole was removed 11 months previous thereto, and that her doctor reported to her that the diagnosis of the mole was "not too good," and that time only would tell as to whether the malignancy would spread?

We agree with appellant that:

"No sensible explanation for her failure to disclose its contents to the plaintiff can be given other than a desire to withhold that information because she recognized the adverse effect it would have upon the acceptance of her application."

The court's opinion denying plaintiff relief solely on the ground that plaintiff had failed to establish an intention to deceive on the part of Miss Cusick, was followed by plaintiff's petition for rehearing (May 20, 1960) requesting "That this court issue its supplemental opinion wherein it is indicated why plaintiff, having established material misrepresentations were made in the application, was not entitled to the relief it sought."

The court denied the motion for rehearing, stating:

"Whether the risk was materially affected by the answers given in the insurance application was a question of fact for the court to decide. The removal of a mole was 'an ailment which did not tend seriously to weaken or undermine (her) health.' The court took this issue into consideration, along with all the other facts and in the ultimate determination of the case.

"An order may be entered pursuant to this determination."

Paragraph 4 of the bill of complaint reads as follows:

"In and by said application, the said Jeannine M. Cusick did state, represent, warrant and agree that she then had no indication of ill health present; that she had no indication then of physical impairment; that she had not consulted or been treated by a doctor or other practitioner or at dispensary or clinic within the 5 years immediately preceding the signing of said application; that she had not within the 10 years immediately preceding the signing of said application had any injury, illness or operation except for 'Tonsillectomy Dec. 27, 1948—Hospitalized 2 days—full recovery—no complication'; that she had never had cancer.

"Said application signed by Jeannine M. Cusick also contained the following:

" 'I hereby declare that all statements and all the answers to the above questions are complete and true, and I agree that the foregoing, together with this declaration, shall constitute an application for insurance.' "

Defendant in her answer to the above paragraph of the bill of complaint, states:

"Answering the allegations of paragraph 4, defendant admits the same except to deny that the statements contained in said application constitute representations and/or warranties."

The pleadings and evidence establish the falsity of the answers given to questions 19, 20, 22, and 24.

As pointed out above, plaintiff completed its case of constructive fraud by establishing these false statements materially affected the risk and hazard assumed by plaintiff.

We quote from our decision in *General American Life Ins. Co.* v. *Wojciechowski*, 314 Mich 275, 281, 282, as follows:

"A false representation in an application for insurance which materially affects the acceptance of the risk entitles the insurer to cancellation as a matter of law. *Krajewski* v. *Western & Southern Life Ins. Co.,* 241 Mich 396. The insurer was entitled to information relative to the medical attention received by the insured, and failure to give this information in the application entitles the insurer to cancellation. *Continental Assurance Co.* v. *Friedman,* 289 Mich 531. A false representation by the insured in the application, that he had not consulted a physician in 5 years, is a representation as to a material fact, which bears a direct relation to acceptance of the risk, and entitles the insurer to cancellation. *Metropolitan Life Ins. Co.* v. *Carter,* 252 Mich 432; *New York Life Ins. Co.* v. *Bahadurian,* 252 Mich 491. Concealment by the insured that he had consulted a physician was concealment of a material fact which bears a direct relation to acceptance of the risk. *Bellestri-Fontana* v. *New York Life Ins. Co.,* 234 Mich 424. If the misrepresentations materially affect the risk it is not necessary to show that the misrepresentations were intentional. *Prudential Insurance Company of America* v. *Ashe,* 266 Mich 667; *Sun Life Assurance Company of Canada* v. *Allen,* 270 Mich 272. Such misrepresentations amount to a constructive fraud (*Bonewell* v. *North American Accident Ins. Co.,* 167 Mich 274 [Ann Cas 1913A, 847]), and such misstatements in the application which materially affect the risk constitute sufficient grounds for cancellation, even though made in good faith, it not being necessary that actual fraud be found. *North American Life Assurance Co.* v. *Jones,* 287 Mich 298."

This is a hearing *de novo,* and while we note appellee's reference to the fact that the trial judge "had the advantage of seeing the witnesses in court and listening to their testimony," we conclude on that point that that did not afford the trial judge

an advantage because of the nature of the record presented to us.

We do not agree with the trial judge that the risk was not materially affected by the answers given in the insurance application and find that plaintiff established constructive fraud.

The decree of the trial court should be vacated and the case should be remanded with instructions to enter a decree for plaintiff canceling its policy and dismissing the cross-bill. Costs to appellant.

*Addendum:*

Since writing the above, the opinion of Justice BLACK has been served. After commenting on the financial interest soliciting agents are apt to have that may cause them to yield to temptation to select or interpret facts in favor of processing an application, Justice BLACK concludes that because Agent Haney did not testify at the trial below plaintiff has not proved either constructive or actual fraud. This point was not raised in the appeal.

An examination of the pleadings and pretrial proceedings gives the answer as to why Agent Haney was not called as a witness.

Paragraph 4 of the bill of complaint alleged:

"In and by said application, the said Jeannine M. Cusick did state, represent, warrant and agree that she then had no indication of ill health present; that she had no indication then of physical impairment; that she had not consulted or been treated by a doctor or other practitioner or at dispensary or clinic within the 5 years immediately preceding the signing of said application; that she had not within the 10 years immediately preceding the signing of said application had any injury, illness or operation except for 'Tonsillectomy Dec. 27, 1948—Hospitalized 2 days—full recovery—no complication'; that she had never had cancer.

"Said application signed by Jeannine M. Cusick also contained the following:

" 'I hereby declare that all statements and all the answers to the above questions are complete and true, and I agree that the foregoing, together with this declaration, shall constitute an application for insurance.' "

Defendant Dorothy Cusick (mother and beneficiary) did not in her answer to the bill of complaint question the allegations as to the questions that were asked and the answers that were given by her deceased daughter, but, to the contrary, answered paragraph 4 as follows:

"Answering the allegations of paragraph 4, defendant admits the same except to deny that the statements contained in said application constitute representations and/or warranties."

The pretrial hearing, before the same judge that presided at the trial, discloses that defendant did not challenge Agent Haney's conduct or in any way infer that the application failed to truly contain deceased's answers to the questions, but instead stated: "It is agreed that pretrial exhibit 1, the policy in question; and pretrial exhibit 2, the original application for the policy, may be introduced without further evidence."

Over 3 years after the insurance policy was issued defendant, by the following testimony, disclosed that she did not in any way doubt the integrity of Haney and still considered him as her "insurance man":

"*Q.* Now, Mrs. Cusick, I will show you a photostatic copy of the application for the life insurance policy in question, and ask you if you can identify Jeannine's signature on that application?

"*A.* I can, yes.

"*Q.* Do you see the date when that application was made, in the lower lefthand corner?

"*A.* No; I can't see. I don't have my glasses.

"*Q.* I am sorry. Were you present at that time?

"*A.* I was in and out of the room as she was being interviewed by Mr. George Haney.

"*Q.* By Mr. George Haney?

"*A.* That's right.

"*Q.* He was the agent for the insurance company?

"*A.* That's right.

"*Q.* Do you know Mr. Haney?

"*A.* Oh, yes, he has collected at my house for quite a few years. He still does.

"*Q.* He is your insurance man?

"*A.* That's right. * * *

"*Q.* Now, did Jeannine at any time before this date, the date of the application, inform you that she was going to take out an insurance policy?

"*A.* No; it was my idea. I suggested it.

"*Q.* You suggested this policy to her?

"*A.* Yes, because just a short time previously her endowment had run out and I suggested that she take out more insurance.

"*Q.* With Prudential?

"*A.* With Prudential. That is where I had all my insurance."

The opinion of the trial court does not indicate in any manner that defendant or the court was denied proof necessary to a decision by the absence of Agent Haney's testimony; that the only issue the court had presented, and the issue that was decided, was whether the statements, as disclosed by the application, were made by the deceased with an intention to deceive or materially affect either the acceptance of the risk or the hazard assumed by the insurer.

Appellee did not consider the absence of Haney's testimony to be of importance in this appeal, and this is disclosed by the fact that appellee lists only 2 questions in her "Counterstatement of Questions Involved," namely:

"1. Do the answers made by deceased in the application for insurance entitle the insurer to judgment as a matter of law?"

"2. Are false answers relative to being in good health and being treated by doctors alone sufficient to bar recovery?"

The question presented to this Court for decision is not, under the record, inadequately submitted because of the lack of Agent Haney's testimony. To agree with Justice BLACK would be to inject an issue in this appeal not presented to this Court, nor considered of sufficient importance to be submitted by counsel at the trial of the case.

CARR, C. J., and DETHMERS, J., concurred with KELLY, J.

BLACK, J. This Court said once, unanimously (*Hughes* v. *John Hancock Mutual Life Ins. Co.,* 351 Mich 302, 310, 312):

"It is time to say with crisp and clear articulation that no matter what fine or large print an insurer of lives may choose to insert in its form of application, these cases of alleged medical fraud are to be considered and determined according to the same rules as are controlling in ordinary fraud cases. When it is shown that a participant—medic or not—in the obtaining or filling out of an application for life insurance is in fact an agent of the insurer, essential information shown as having been imparted to such agent will be imputed to the insurer according to rules given in *Pitcher* v. *World Insurance Company,* 327 Mich 520; *Turner* v. *Mutual Benefit H. & A. Assn.,* 316 Mich 6; *Serbinoff* v. *Wolverine Mutual Motor Insurance Co.,* 242 Mich 394; *Hawkeye Casualty Co.* v. *Holcomb,* 302 Mich 591, and like cases. * * *

"We must bear in judicial mind that soliciting and medical agents of the insurer are apt to have a finan-

cial (commission or fee) and, hence, primary interest in more and more policy sales. The temptation to 'select' or 'interpret' (as in *Pitcher* and apparently here) fact disclosures in favor of processing of an application is present, whether indulged or not, and thus the unrepresented applicant is as much exposed to a possible record of half truth as is the prospective witness whose extrajudicial statement is exclusively and privately taken by a partisan of one side of the coming lawsuit."

The following record of reasons for remand is entered upon our scroll. It is based squarely on that fundamental tenet of equity; that a hearing *de novo* means exactly what the dictionary says, a hearing afresh, and that if, upon exercise of that "independent" judgment which in equity cases is due from us,[1] it appears that the appellant burden-bearer has not sustained his burden, either affirmance or remand—for more proof—should be ordered. Fairness to both parties suggests the latter course; neither party having raised the question which to some of us stands forth from this record like Excalibur.

As a sort of prologue, attention is drawn to the analogous case of *Ruppe* v. *Steinbach,* 48 Mich 465. The appeal, from a chancery decree, was taken by the defendant burden-bearer of the sole issue. He did not take the stand in support of his allegations, yet knew the truth or falsity thereof more than did the actually sworn witness. Noting that "a different rule ought to and does prevail in a chancery cause," the Court disposed of the appeal exclusively on these grounds (pp 466, 468, 469):

---

[1] "This being an equity case we hear it *de novo.* *Bankers Trust Company* v. *Bradfield,* 324 Mich 116. While we give due consideration to the findings of the trial judge, nonetheless it is our duty to weigh the evidence and reach an independent conclusion. *Hawthorne* v. *Dunn,* 210 Mich 176, 179." *Hitchman* v. *Township of Oakland,* 329 Mich 331, 335, 336.

"The evidence in some essential respects is very unsatisfactory indeed, and is singularly wanting upon some matters which we have a right to assume could have been placed beyond all controversy had the party upon whom the burthen of proof rested thought it worthy of his attention.  Where evidence may fairly be presumed to be within the reach of a party and he does not introduce it, he must not complain if the court, in considering what is produced, does not find it as full and satisfactory as he supposed, or extend it by construction to meet a defence that might have been proven.  *  *  *

"This is every word there is bearing upon the subject, and while we may concede that it tends to establish all that defendants claim for it, yet that is not the question here, as this Court is asked to reverse the decree of the court below, and that should not be done upon the mere tendency but upon the weight and satisfactory nature of the evidence.  *  *  *

"We need not however pursue this matter farther. Had the case been one at law and a jury had under proper instructions found in favor of the defendant, the verdict possibly could not have been disturbed in this Court, but as already said a different rule ought to and does prevail in a chancery cause.  The evidence introduced should be sufficiently strong and clear to fairly establish the several facts necessary to make out the case or defence relied upon.  And while in many cases such evidence is not attainable, yet where it is within the reach and power of a party and he does not produce it, no intendment should be made in his favor."

There is nothing novel about this rule of unfavorable inference against a party who fails to call a knowledgeable witness controlled by him.  See *Cole v. Lake Shore & M. S. R. Co.*, 81 Mich 156, 161; *Brandt v. C. F. Smith & Co.*, 242 Mich 217, 222; *In re Petition of Upjohn*, 256 Mich 181, 183; *Laughlin v. Michigan Motor Freight Lines*, 276 Mich 545, 550; *Grigg v. Hanna*, 283 Mich 443, 459; *Leeds v. Masha,*

328 Mich 137, 140; *Barringer* v. *Arnold,* 358 Mich 594, 601.

Turning now to this typical case of alleged medical fraud: Whether the accuser-insurer relies upon a claim of "actual intent to deceive," or upon a "materially affected" risk or hazard, it must to obtain cancellation prove actual falsity of representation by the decedent. And no such charge is proven, in my view of the law of evidence at least, unless and until the accuser has assembled for judicial scrutiny *all proof of its charge which is peculiarly within its own control.* Here, such proof is inexplicably nonattendant. I refer to the absence from the witness stand of the agent (George F. Haney) who solicited this application and filled in the answers on the printed form; the form which by itself is said to prove that Miss Cusick actionably concealed from him material medical facts of which she—not her physician—had personal knowledge. In a word, neither the chancellor below nor this Court in turn has been informed, by the one person who could attest and should have been present for direct and then vigorous cross-examination, whether Miss Cusick did or did not actually disclose to him what his principal alleges was fraudulently concealed. Consequently, and since everything said of the respective legal roles of applicant and agent, both in the *Hughes Case* and in *Pitcher* v. *World Ins. Co. of Omaha,* 327 Mich 520, applies here with equal force, I am quite unable to find that the plaintiff so far has proved—preponderantly—actual or constructive fraud on the part of this deceased applicant.

It was shown definitely that plaintiff Prudential's court-absent agent had collected premiums regularly at the Cusick home; that he knew Miss Cusick prior to the time of application and the apparent condition of her health at such time; that he certified to his principal that Miss Cusick's "health, character,

habits and home surroundings" were such that he recommended "the Company's acceptance of the risk," and that he as in *Pitcher* and *Hughes* filled out the allegedly misrepresentative application from questions and answers passing between himself and Miss Cusick. What were those oral answers? Did they or did they not disclose *all* that this apparently healthy young lady knew then about her past medical history? Plaintiff could but did not supply such answers, yet asks that we pronounce the young lady guilty of concealment without having proved actual concealment by the best and available evidence thereof.

How, in foregoing circumstances, may this Court ascertain (see *Pitcher* and *Hughes,* both *supra*) whether Agent Haney, manifestly commission-interested in a sale, did or did not "select" or "interpret" for written answer what Miss Cusick did in fact tell him? The burden-bearer supplies no clew, and I own candidly to suspicion of its case when, unlike the plaintiff in *Manufacturers Life Ins. Co.* v. *Beardsley,* 365 Mich 308, it has chosen not to swear its knowledgeable and available agent in support of the charge it makes against a deceased person who may in fact be innocent of concealment.

Mr. Justice KELLY, however, quoting and relying upon *General American Life Ins. Co.* v. *Wojciechowski,* 314 Mich 275, finds *de novo* that the chancellor erred in finding an absence of actionable fraud. As is true on too many occasions, the *General American Case* is employed by my Brother in a factual setting where it simply does not fit.[2] In that case the Court

---

[2] "In the preparation of an opinion, the facts of the case are in mind. It is prepared with reference to such facts, and when considered in connection therewith, will generally be found satisfactory. When, however, an attempt is made to pick out particular parts or sentences, and apply them indiscriminately in other cases, nothing but confusion and disaster will be likely to follow. In other words, the opinion and decision of a court must be read and examined as a

found affirmatively (not so in this case, below or here):

"The statement by Mr. Wojciechowski that he had not received any medical or surgical advice or attention within the 5 years preceding making his application for issuance of the policy was false and intended to deceive, was the concealment of a material fact, the falsity of which was known to him." (p 281.)

Further, the defendant beneficiary made no affirmative showing that Mr. Wojciechowski's intentionally false answers were filled in by an agent of the insurer; whereas the exact contrary was shown here. Finally, although the applicant had answered that he had not "received any medical or surgical advice or attention within the last 5 years," it was shown without dispute that, during such 5-year period, he had consulted 1 testifying doctor *no less than 64 times,* with respect to which he (the testifying doctor) "had rendered medical or surgical advice or attention." Really, Brothers, the 2 cases are a bit different.

Note, now, the reason for our refusal to apply the *General American Case* to *Bendford* v. *National Life & Accident Ins. Co.,* 356 Mich 52, 60:

"Defendant then cites *General American Life Insurance Co.* v. *Wojciechowski,* 314 Mich 275, and cases therein cited for the proposition that 'false answers relative to being in good health and being treated by doctors bear a direct relation to acceptance of the risk' and that, therefore, defendant is entitled to judgment as to matter of law. With this we do not agree under the facts in this case. We refer particularly to the facts attending the making of the application, plaintiff's decedent having signed

whole in the light of the facts upon which it was based. They are the foundation of the entire structure which cannot with safety be used without reference to them." Marston, J., writing for the Court in *Larzelere* v. *Starkweather,* 38 Mich 96, 101.

it but defendant's agent apparently having inserted the answers."

All this may explain my reason for refusal to identify the *General American Case* with the one at bar. There the Court found an intent to defraud. Here Justice KELLY is quite unwilling to go that far, yet is willing to find that this deceased young lady was guilty of "constructive" fraud, even though plaintiff did not prove, as well it might have if such were the truth, that she answered dishonestly some questions the unsworn Mr. Haney had put to her. For my part, courts should in these circumstances repeat their insistence that fraud charged against a decedent must be proved, convincingly according to the rule of rote judges declare and redeclare in fraud cases.

Justice KELLY says that the factor of absence of Mr. Haney from the witness stand was not raised or considered below, and that appellee's counsel makes no point of it here. Granted, and what of it, even though counsel may snore steadily at the table assigned to them? Courts of equity—trial and appellate—are supposedly and exclusively governed by principles of equity, aided but not controlled by the presentations of counsel. Their chancellors are directed to concern themselves with the equitable rights of the assembled parties; not the granitic grooves of the law. They are required, as I understand equity jurisprudence, to enter or uphold that decree which in conscience is right upon the whole record, no matter what points of law or fact counsel may stress, and the sooner that truism is judicially understood, the sooner will the beneficience of equity blossom fully as it should. For elaboration, see *Spoon-Shacket Company, Inc.,* v. *Oakland County,* 356 Mich 151. There, as here, our membership was divided by the same rock in the jurisprudential

stream which separated Blackstone's view of equity from that of Pomeroy. See quotations in the *Spoon-Shacket Case* (pp 157–164), including that which was penned by Judge Parker in *Bowen* v. *Hockley* (CCA 4), 71 F2d 781 (94 ALR 856).

This is not a law case we examine for reversible error. Upon oath we are sworn to determine it independently, all over again on the original record. We sit, supposedly, as 8 chancellors required to judge the asserted right of one charging fraud to the relief it seeks. We are called upon to grant or deny relief according to the equity of the case without any restriction occasioned by the act or omission of counsel. At least that is the way we should proceed, and doubtless will in future equity cases when some other counsel has neglected to raise an evidentiary question this Court should raise, on its own, for the sake of the equity of the case and the preservation of equity jurisprudence.

Even in law cases, also in the instance of review of administrative decisions, "The general rule that a question may not be raised for the first time on appeal to this Court is not inflexible." (CARR, J., writing for the unanimous Court in *Dation* v. *Ford Motor Co.*, 314 Mich 152, 160 [19 NCCA NS 158]). Justice CARR proceeded (pp 160, 161):

"When consideration of a claim sought to be raised is necessary to a proper determination of a case, such rule will not be applied. Thus in *Thomas* v. *Morton Salt Co.*, 258 Mich 231, it was held that the question of estoppel to deny the constitutionality of a statute, was properly subject to consideration by this Court in order to avoid conflict with a prior decision, although the question had not been raised in the circuit court. See, also, *Auditor General* v. *Bolt*, 147 Mich 283; *Mitchell* v. *Reolds Farms Co.*, 255 Mich 240; *Meek* v. *Wilson*, 283 Mich 679."

The *Thomas Case*, cited by Justice CARR, was a suit at law for damages. This Court raised a question of estoppel against the plaintiff-appellee and thus defeated his cause against the defendant corporation. The *Bolt* and *Meek Cases*, likewise cited, were suits in equity. It seems permissible, even at law as always in equity, that decisive questions be raised on high. The difference is that the practice is extremely rare at law; whereas in equity it is necessary on due occasion lest the Court enter an unconscionable decree.

*Conclusion:* In this equity case the plaintiff, bearing always that burden of persuasion, has accused a deceased person of fraud. It failed to sustain such burden below and—as I hold—has failed so far to sustain that burden here. Mr. Haney, readily available as we must assume, knows what information the forever stilled voice of Miss Cusick imparted to him when he filled out the application for her signature. He was the company's agent (*Pitcher, supra,* at 523 and *Hughes, supra* at 310); yet the company chose not to offer his testimony or to explain its choice. Such is not the way to prove fraud on the part of one who has passed beyond. Instead, an inference of concealment is left; concealment of that which came to revelation both in *Pitcher* and *Hughes,* and no court of equity should decree reversal in favor of any like plaintiff or defendant whose affirmative case or defense is so "singularly wanting" (*Ruppe, supra,* 466) of decisive proof available to but withheld by such party. Rather, our decree as to form should be that of the old Scotch verdict, "Not proven M'Lord," so far at least.

When all is said the crucial facts known to Miss Cusick are that she had a mole on the lower part of her back; that Dr. Wikiera excised the mole, in his office, in 15 minutes; that she, then and thereafter in the apparent vigor of youthful good health, continued to work in the doctor's office, and that some

months later she was stricken with that swiftly developing and inevitably fatal disease we know as brain cancer. It is asking too much that we additionally find, from no proof at all, that Miss Cusick failed to advise Mr. Haney of such office operation and failed to refer him to Dr. Wikiera; also that Mr. Haney, assuming as I think we should that Miss Cusick did so advise and refer, would have written the disclosed fact into the application. The inference left by his absence is that he "interpreted" such advices as being unimportant and so left same out of the "give full details" space of the application.

Mr. Haney should be sworn to dispel such inference before this court of equity proceeds further. I would therefore continue the cause under section 1 of former Court Rule No 72 (1945), now GCR 1963, 820, for the taking of the complete testimony of Mr. Haney; also that of Miss Cusick's mother, she according to the record having been present part of the time when Mr. Haney was engaged in questioning Miss Cusick and in filling out the application. Following the taking of such testimony and its transcription, the record thereof with supplemental opinion of the trial chancellor should be forwarded here for final consideration and entry of such decree as may accord with the just rights of the parties.

KAVANAGH, SOURIS, and OTIS M. SMITH, JJ., concurred with BLACK, J.

O'HARA, J., took no part in the decision of this case.