**In the Interest of N. N., DOB: 10–18–61, a child.**

**Dorothy FISHER, Petitioner and Appellee,**

**v.**

**N. N., child, Respondent and Appellee,**

**G. N., father, Respondent and Appellant,**

**and**

**R. N., mother, Respondent.**

**Civ. No. 9570.**

Supreme Court of North Dakota.

April 26, 1979.

Rehearing Denied April 30, 1979.

John M. Olson, States Atty., Bismarck, for Dorothy Fisher, petitioner and appellee.

Benjamin C. Pulkrabek, Mandan, for N. N., respondent and appellee.

G. N., Bismarck, pro se.

Burt L. Riskedahl, Bismarck, for R. N., respondent; appearance but no argument or brief.

ERICKSTAD, Chief Justice.

In this case, G.N., the father of N.N., a girl 17 years of age as of October 18, 1978, hereafter referred to as Naomi, a pseudonym, appeals from a judgment of the juvenile court for the County of Burleigh dated September 13, 1978, which, among other things, determined that Naomi is a deprived child and temporarily placed her in the custody of the Burleigh County Social Services for a period of not to exceed six months. We affirm.

The appeal was heard in our court on March 6, 1979, only a few days prior to the termination of the six-month-period. We were informed at oral argument that the Burleigh County Social Services Board had placed Naomi in the home of her mother, R.N., sometime prior to the date of oral argument, but that the Board still retained official custody. Obviously, then, as the judgment[1] limited the custody of Naomi in the Board for a period not to exceed six months, that custody, unless it has been continued by a subsequent order and judgment, is terminated. As the judgment, however, determined that Naomi is a deprived child, a determination which casts a reflection on the parents, it is essential that we consider the father's contentions on this appeal.

We note that paragraph 11. of the judgment requires that the Burleigh County Social Services Board file a report with the court prior to the expiration of the order.

---

1. The pertinent part of the judgment modified to preserve the anonymity of the parties, follows:

"1. That this court has jurisdiction of the subject matter of this action and jurisdiction over all the parties to this action;

"2. That N.N. [Naomi] is a deprived child as defined by law;

"3. That temporary custody of N.N. [Naomi] is hereby placed with the Burleigh County Social Services for a period not to exceed six (6) months;

"4. That the Court recommends to said agency that N.N. [Naomi] be allowed to remain with relatives, particularly the home of J.J., who is an aunt to [Naomi] and sister to the respondent, G.N., if such placement is determined feasible by Burleigh County Social Services;

"5. That the respondent, G.N., continue to seek therapy from Dr. Albert F. Samuelson, and that this Court be provided with a psychiatric evaluation report as soon as practicable;

"6. That the respondent, R.N., seek psychiatric or other professional counseling and that an evaluation report be submitted to the court as soon as practicable;

"7. That Burleigh County Social Services proceed to provide family counseling to G., R., and N.N. [Naomi] as soon as individual psychotherapy or counseling permit;

"8. That Burleigh County Social Services proceed diligently in making every effort during the period of this placement to assist the family of the parties hereto in uniting together and restoring cordial and familial relationships;

"9. That reasonable visitations be allowed and arranged to provide proper contact between N.N. [Naomi] and the respondents;

"10. That the parties hereto are hereby ordered to refrain from interfering with the care or custody of N.N. [Naomi], nor with any home or placement of her during the pendency of this order, and, more specifically, that the respondent, R.N., is not to interfere with any placement for N.N. [Naomi] made by Burleigh County Social Services and that contacts made by R.N. are to be arranged through Burleigh County Social Services or, as N.N. [Naomi] may make herself;

"11. That Burleigh County Social Services, prior to the expiration of this order, shall file with the court a report concerning the progress made by the parties hereto in restoring proper family relationships in accordance with the objectives as previously set forth."

We assume that this has been done and if not we trust that it will be done soon.

This is a difficult case, made even more difficult because Mr. N. prepared his brief and argued his appeal in our court without the advice or representation of counsel. This has precipitated the filing of two motions by counsel on behalf of Naomi, one asking us to dismiss the appeal on issues now moot, and the other asking us to dismiss the appeal for the reason that Mr. N.'s brief does not conform to Rule 28(a), N.D.R. App.P.[2] Both motions are denied.

We have examined Mr. N.'s brief in light of Rule 28(a) and agree that it does not technically comply therewith, but we do not believe the ends of justice would be furthered if we were to dismiss the appeal in this instance under the present circumstances. Incidentally, Mr. N. was represented by competent and experienced counsel at the juvenile court level, and it was apparently because his counsel believed there was no basis for an appeal that the juvenile court

declined to appoint counsel for Mr. N. at county expense to take this appeal.

Unfortunately, we are not aided significantly by the initial briefs of counsel for either Naomi or the petitioner, as they too have failed to comply with our Rules of Appellate Procedure, particularly Rule 28(b).[3]

The brief of counsel for Naomi is especially illustrative of this failure to comply with our Rules.[4] We shall hereafter encourage our clerk of court to reject briefs filed by counsel admitted to practice law before our court that so obviously fail to comply with our rules.

In a proceeding to determine whether or not a child is a deprived child, which could ultimately result in termination of parental rights, where we must, on appeal, try the case de novo[5] and are unable to apply Rule 52(a), N.D.R.Civ.P., compliance with Rule 28(e), N.D.R.App.P., is especially important.[6]

---

**2.** "(a) *Brief of the appellant.* The brief of the appellant must contain under appropriate headings and in the following order:

1. A table of contents, with page references, and a table of cases (alphabetically arranged), statutes, and other authorities cited, with references to the pages of the brief where they are cited.
2. A statement of the issues presented for review.
3. A statement of the case. The statement shall first indicate briefly the nature of the case, the course of proceedings, and its disposition in the court below. There shall follow a statement of the facts relevant to the issues presented for review, with appropriate references to the record [subdivision (e)].
4. An argument. The argument may be preceded by a summary. The argument shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes, and parts of the record relied on.
5. A short conclusion stating the precise relief sought." Rule 28(a), N.D.R.App.P.

**3.** "(b) *Brief of the appellee.* The brief of the appellee shall conform to the requirements of subdivision (a)(1)–(4), except that a statement of the issues or of the case need not be made unless the appellee is dissatisfied with the statement of the appellant." Rule 28(b), N.D. R.App.P.

**4.** The following constitutes the entire brief modified to preserve anonymity:

"STATEMENT OF FACTS

"This case came about because of a petition filed on August 18, 1978. A hearing on the same was held on September 7, 1978, in Burleigh County District Court, with the Honorable Benny Graff presiding. The child was found to be deprived and judgment was entered stating the same on the 13th day of September, 1978.

"ISSUE

"DID THE EVIDENCE AND TESTIMONY PRESENTED AT THE TRIAL SUPPORT THE JUDGE'S DETERMINATION THAT THE CHILD N.N. [NAOMI] WAS DEPRIVED.

"Yes.

"Dated this 3rd day of January, 1979."

**5.** "Our scope of review in deprivation cases is governed by § 27–20–56(1), NDCC, which provides that review be based upon the files, records, and minutes or transcript of the evidence of the juvenile court, giving appreciable weight to the findings of the juvenile court. We are not governed by the 'clearly erroneous' rule of Rule 52(a), North Dakota Rules of Civil Procedure, but are allowed to re-examine the evidence in a manner similar to the former trial de novo. *Jacobson v. V.S.*, 271 N.W.2d 562 (N.D. 1978)." *In the Interest of M.M.C., a child, Foster v. B.J.C.*, 277 N.W.2d 281 (N.D.1979).

**6.** "(e) *References in briefs to the record.* References in the briefs to parts of the record

At our request made at the close of the oral arguments, in light of the paucity of material in the briefs, counsel for the petitioner filed a supplemental brief asserting "[j]ust because the Supreme Court is hearing this matter based upon a limited 'de novo' proceeding, does not automatically shift the burden of sustaining one's position from the appellant to the appellee."

In support of this position, counsel quotes from *Prudential Insurance Company of America v. Cusick*, 369 Mich. 269, 284, 120 N.W.2d 1, 8 (1963):

"The following record of reasons for remand is entered upon our scroll. It is based squarely on that fundamental tenet of equity; that a hearing of *de novo* means exactly what the dictionary says, a hearing afresh, and that if, upon exercise of that 'independent' judgment which in equity cases is due from us, it appears that the appellant burden-bearer has not sustained his burden, either affirmance or remand—for more proof—should be ordered."

It should be noted that *Cusick* did not involve an issue of deprivation and custody, but involved an issue over a life insurance policy.

In *Cusick* the plaintiff had accused a deceased person of fraud. Notwithstanding that the court said that the corporation failed to sustain that burden below and failed to sustain it in the supreme court, the Supreme Court of Michigan remanded the case for the taking of further testimony.

■ In this case we see no need for a remand for the taking of further testimony, but we do see a need for stressing that in deprivation cases the burden of disproving the presumption that a parent is fit and suitable rests upon the person challenging it. *In the Interest of M.C.C., Foster v. B.J.C.*, 277 N.W.2d 281 (N.D.1979); *In re J.V.*, 185 N.W.2d 487, 492 (N.D.1971).

■ We have reviewed the entire record, particularly in light of the references to the pages and lines of the transcript which we elicited from counsel for Naomi in oral argument, and conclude that the evidence as contained in the entire transcript bears out the findings of the juvenile court.

Our statute defines a deprived child as one who "[i]s without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals, and the deprivation is not due primarily to the lack of financial means of his parents, guardian, or other custodian" (§ 27–20–02(5)(a), N.D.C.C.). As the statute indicates, deprivation may involve emotional as well as physical health. In this case, as indicated by the juvenile court's findings [7] and as sustained by the

reproduced in the appendix filed with the brief of the appellant [see Rule 30(a)] shall be to the pages of the appendix at which those parts appear. If the record is reproduced in accordance with the provisions of Rule 30(f), or if references are made in the briefs to parts of the record not reproduced, the references shall be to the pages of the parts of the record involved; e. g., Answer p. 7, Motion for Judgment p. 2, Transcript p. 231. Intelligible abbreviations may be used. If reference is made to evidence the admissibility of which is in controversy, reference shall be made to the pages of the appendix or of the transcript at which the evidence was identified, offered, and received or rejected." Rule 28(e), N.D.R.App.P.

7. The following constitutes the court's findings modified to preserve anonymity:

"1. That the above mentioned child was removed from the custody of the respondents on the 13th day of August, 1978, and the temporary care, custody and control of the above named child was placed with the Burleigh County Social Services Board for temporary care and placement;

"2. That at the time of said removal, N.N. [Naomi] was the approximate age of 16 years;

"3. That on the 18th day of August, 1978, a petition for a determination to be made concerning the care, custody and control of said child was made by Dorothy Fisher alleging that said child was deprived;

"4. That on numerous occasions N.N. [Naomi] suffered physical abuse from her mother, R.N., during physical altercations between them occurring during the previous approximate nine months;

"5. That N.N. [Naomi] had on several occasions received bruises and other personal injury as a result of being struck by her mother, R.N.;

"6. That on December 4, 1977, N.N. [Naomi] was placed voluntarily in the home of Rev. Dennis Tippett, the family's pastor;

"7. That on August 13, 1978, N.N. [Naomi] was struck by R.N. and a belt was placed

transcript, although both are involved, emotional health is that which is most affected at this time.

Without attempting to detail the facts as they are borne out by the transcript, we conclude that the child is a deprived child.

Our analysis of Mr. N.'s brief and his argument in our court is that as he has never personally physically abused his daughter, the judgment is in error. As this case is permeated with emotional issues and instability in the home arising therefrom, his argument relative to physical abuse is irrelevant.

We have held that where one parent could not prevent another parent in the home from causing a child to be deprived, the child was deprived and termination of both parent's rights were justified, notwithstanding that one parent's conduct was active and the other parent's conduct was passive. *In the Interest of K.P., McGurren v. E.D. (& R.D.),* 267 N.W.2d 1, 5 (N.D. 1978). *See also In re J.Z.,* 190 N.W.2d 27, 35 (N.D.1971), in which we affirmed termination of a mother's parental rights because of her passive acceptance of her husband's abuse of their infant. Although in this case the parents had for a time lived apart as distinguished from the facts in *McGurren,* the evidence supports the conclusion that even when the parents lived apart, the mother so dominated the father that he forced Naomi to return to the mother's home by taking her clothes to the mother's home.

■ Mr. N. has also urged that since the Social Service Board did not attempt in his view to carry out the requirement of part 8. of the judgment, asking the Board to assist the family in reuniting, that the judgment should be set aside. This is a matter properly to be considered by the juvenile court, not by this court on appeal. It is not a basis for setting aside the judgment.

■ In addition, Mr. N. contended in oral argument that the judgment should be set aside because evidence in the record is not supported by eye witness testimony. His argument seems to be that any judgment based upon circumstantial evidence is defective and should be set aside. His argument is not persuasive, inasmuch as circumstantial evidence is acceptable in both civil and criminal cases. *State v. Wilson,* 267 N.W.2d 550, 554 (N.D.1978); *In re J.Z., supra* at 35; *State v. Carroll,* 123 N.W.2d 659, 667–669 (N.D.1963).

Because deprivation hearings involve the relationship of parties within the home and out of the view of the public, a rule which would prohibit the use of circumstantial evidence would be detrimental to the welfare of the child, and as in the last analysis it is the child with whom we are the most deeply concerned, such a rule would be counterproductive. We obviously must reject such a rule.

For the reasons stated in this opinion, the judgment of the juvenile court is affirmed.

SAND, and PEDERSON, JJ., and MUGGLI, D. J., concur.

MUGGLI, District Judge, sitting in place of PAULSON, J., disqualified.

VANDE WALLE, J., disqualified.

around her neck, as well as having her hair pulled and being locked out of the house;

"8. That N.N. [Naomi] has suffered emotional abuse by being subjected to concerted and persistent personal degradation including public embarrassment as well as being consistently called such names as 'slut' and 'whore', by her mother, R.N.;

"9. That during the extent of her stay with her father, such abuse has continued by continued interruption by her mother, R.N., and that G.N. is unable to prevent or limit said interferences or abuse;

"10. That N.'s [Naomi's] father, G.N., has at times blamed Naomi for the disruption that is continuing in the N. family as well as the marital difficulties existing between R. and G.N.;

"11. That both respondents, G. and R.N., have experienced persistent emotional as well as possible psychiatric problems which contribute to the deprivation of N.N. [Naomi];

"12. That the deprivation is not due primarily to the lack of financial means of the respondents;

"13. That the deprivation of N.N. [Naomi] is likely to continue and that the problems and difficulties experienced will not be resolved by returning N.N. [Naomi] to the home of either respondent."