HUGHES v. JOHN HANCOCK MUTUAL LIFE
INSURANCE COMPANY.

1. INSURANCE—LIFE INSURANCE—EVIDENCE—QUESTION FOR JURY.
   The defendant insurer, as well as the beneficiary under a life
   insurance policy, is entitled to have questions of fact submitted
   to the jury, whenever the evidence in an action on the policy
   tried before a jury presents a question of fact.

2. SAME—LIFE INSURANCE—PRIOR CONSULTATION OR TREATMENT—
   FRAUD—QUESTION FOR JURY.
   Evidence presented a question of fact as to whether the written
   answers to questions as to prior consultation or treatment by a
   physician or hospital, contained in application for life insur-
   ance policy sued on, were false, hence, verdict was improperly
   directed for plaintiff.

3. SAME—LIFE INSURANCE—FRAUD IN APPLICATION—QUESTION FOR
   JURY.
   Testimony by a physician that insured had consulted him regular-
   ly during 5-year period prior to her application for life insur-
   ance and had received medical treatment in pursuance of such
   consultations, cast burden of proof upon plaintiff beneficiary
   to show that such consultations and treatment were not for
   an ailment tending to seriously weaken or undermine health
   of woman upwards of 50 years of age, where answer on appli-

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 29 Am Jur, Insurance § 1528.
[2, 3] 29 Am Jur, Insurance § 1534.
[4] 53 Am Jur, Trial § 181.
[5] 29 Am Jur. Insurance § 570 *et seq.*
[6] 29 Am Jur, Insurance §§ 822, 823.
[8] 29 Am Jur, Insurance § 1440.

cation denied such consultation or treatment and examining physician had died, since if disclosure had been made to the examining physician there would be no fraud and the matter of credibility of witnesses involved was for jury consideration.

4. TRIAL—JURY—CREDIBILITY OF WITNESSES—WEIGHT OF EVIDENCE.
It is of the substance of a jury trial in a common-law action that the jury be the judge of the credibility of witnesses and of the weight to be accorded their testimony.

5. INSURANCE—LIFE INSURANCE—APPLICATION—MEDICAL FRAUD.
Cases of alleged medical fraud in applications for life insurance are to be considered and determined according to the same rules as are controlling in ordinary fraud cases.

6. SAME—LIFE INSURANCE—APPLICATION—INFORMATION IMPUTABLE TO INSURER—ESTOPPEL—FRAUD.
Essential information which is shown to have been imparted to physician who examined applicant for life insurance will be imputed to the insurer, where it appears that the participant in filling out the application is an agent of the insurer, whether the participant be a physician or not, since the insurer is estopped by action of its agent from asserting fraud.

7. EVIDENCE—LAYMAN'S KNOWLEDGE OF MEDICAL TERMS—LIFE INSURANCE EXAMINER.
It will not be assumed that an average applicant for life insurance is possessed of such professional knowledge of medical terms as would, in the case of an applicant doctor or lawyer, provoke challenge of the interpretation placed upon his answers by the examining physician, where the defense of medical fraud is interposed in an action on a life insurance policy.

8. INSURANCE—LIFE INSURANCE—MEDICAL FRAUD—EVIDENCE.
An insurer, under a life insurance policy, charging medical fraud after the insured becomes unavailable as a witness, must prove the charge with clear and convincing force regardless of the printed stipulations in the application as signed.

9. SAME—LIFE INSURANCE—APPLICATION—REQUEST TO CHARGE.
Requested instructions casting the onus of error, if any, in recording of answers as contained in application for life insurance, on plaintiff beneficiary, rather than the insurer, were properly denied in action for face of life insurance policy after death of insured.

Appeal for Muskegon; Fox (Noel P.), J. Submitted October 16, 1957. (Docket No. 60, Calendar No. 47,059.) Decided March 5, 1958.

Assumpsit by Mildred Hughes against John Hancock Mutual Life Insurance Company, a Massachusetts corporation, for face of policy on death of insured. Directed verdict and judgment for plaintiff. Defendant appeals. Reversed and remanded.

*Marcus, Kelman, Loria, McCroskey & Finucan* (*Jerry S. McCroskey,* of counsel), for plaintiff.

*Sessions & Barlow,* for defendant.

BLACK, J. This suit was brought upon a policy of life insurance in the amount of $1,000, issued February 1, 1951, by defendant to Grace Teall. The defense is what is known to the profession as medical fraud. The policy names plaintiff Mildred Hughes, daughter of Grace Teall, as beneficiary. Grace Teall died September 17, 1952, at age 53. The immediate cause of death was rupture of an ulcer of the stomach, causing peritonitis. A contributory cause of death, according to testimony offered by defendant, was hypertension, or high blood pressure.

Application for the policy was made at Muskegon. Mrs. Teall, a resident of Muskegon, was visiting friends in Indianapolis at the time. The application was sent to Indianapolis for medical processing. A Dr. Cayley, defendant's medical examiner at Indianapolis, went to the home where Mrs. Teall was staying and proceeded with the required medical examination including filling out of answers to health and medical questions as contained in part "B" of the application. The medical examination, the part "B" question and answer interview, and the signature of part "B" by Mrs. Teall, took place in

the presence of surviving witnesses.* Dr. Cayley died prior to trial, absent deposition on his part.

Part "B" of the application contains this question and answer:

"13. Have you, during the past 5 years, consulted any physician or other practitioner, or been confined to or treated in any hospital, sanatorium, dispensary, clinic or similar institution not stated in answers to questions 11 and 12?

"Answer: No."

Suit having been filed, defendant pleaded that the quoted answer (plus another answer to another question we need not consider) to question 13 was false and fraudulent; that such false answer materially affected acceptance of the risk, and that it was entitled to regard the policy as void for fraud. Due issue having been framed in such regard, the case came to jury trial. At close of the proofs and on motion a verdict was directed for plaintiff. Judgment for plaintiff thereupon entered, from which defendant appeals. The principal question brought here is whether an instructed verdict was proper.

*First:* The tables are turned in this typical case of alleged medical fraud in the making of application for life insurance. Here the insurer's examining physician was not present to relate from the witness stand that which is usually found in reports of similar cases, namely, that the medical application as supervised by and signed before him fully and correctly portrays all disclosures, by the applicant, pertaining to the latter's health and previous medical history. Instead, the 2 mentioned witnesses testified at length to full and material disclosures—not set forth in the application—by the applicant to defendant's examining physician. Such

* Mrs. Blanch Brown of Indianapolis and Mrs. Grace Burns of Muskegon. Mrs. Burns was a daughter-in-law of Mrs. Teall and was visiting at the Brown home, in Indianapolis, with Mrs. Teall.

disclosures, if made as testified, vary substantially from the face of the application and supply, in substance, that which came to appraisal, in *Pitcher* v. *World Insurance Company,* 327 Mich 520, in conjunction with Mr. Pitcher's answer to question 9 (see page 522 of *Pitcher's* report). Thus, and if witnesses Brown and Burns are to be believed, Dr. Cayley indeed should have written a "yes" rather than "no" answer to said question 13.

We have, then, a case where defendant has adduced proof tending to show that Mrs. Teall consulted her physician (Dr. Durnell of Muskegon) on 15 occasions during the 5-year period preceding date of application and that the *written* answer to question 13 was therefore false. On the other hand, plaintiff has submitted proof that Dr. Cayley was given an honest and detailed answer to said question 13. The result was and is a jury question. We turn on these premises to steadfast reasons for ruling that a defendant as well as a plaintiff is entitled to have his case determined by the assembled triers of fact whenever questions of fact are testimonially made to appear.

Looking at defendant's proof as outlined, we agree with counsel that the written answer to question 13, coupled with Dr. Durnell's testimony that Mrs. Teall consulted him regularly during the 5-year period and received medical treatment in pursuance of such consultations, would ordinarily shift to plaintiff the burden of proving that Mrs. Teall's consultations with and treatment by her physician were not for an ailment or ailments tending to seriously weaken or undermine her health (*Rhode* v. *Metropolitan Life Insurance Co.,* 129 Mich 112; *Bullock* v. *Mutual Life Insurance Co. of New York,* 166 Mich 240, 247; *Wohlfeil* v. *Bankers Life Co.,* 296 Mich 310, 319; and *General American Life Ins. Co.* v. *Wojciechowski,* 314 Mich 275). However, and in the

circumstances of claimed disclosure by Mrs. Teall,* the question of shifting of such burden cannot be resolved without jury appraisal of credibility of the testimony so given by Mrs. Brown and Mrs. Burns. This follows since there was no fraud if such disclosure was made. Here, then, is the difficulty with plaintiff's motion for directed verdict. It called for resolution by the trial judge of an issue of fact, something quite beyond his authority in a jury case.

The trial judge, prefacing his decision that a verdict for plaintiff should be ordered, said:

"Those witnesses (Brown and Burns) were examined very extensively; the court had an opportunity to observe these witnesses on the stand. The court, from that observation, concludes that they were telling exactly what happened at the time of the examination in Indianapolis, at 1010 Shelby street. Each of the witnesses impressed the court with the integrity of their testimony. The only contradiction to the testimony is the signed statement on the application. The circumstances of the examination are such that it took place at a home. These 2 women who testified in the case, Blanch Brown and Grace Burns, were there all during the examination. * * *

"We have a situation in which a professional man, one who is in possession of greater knowledge than the ordinary person, physically examined and questioned the applicant. The applicant, according to the testimony, fully disclosed the fact of doctor visitations within a 5-year period of time of the disabilities which were apparent to her and the doctor who made the examination and filled out all of the answers to all of the questions, each and every single answer to each and every question, after such questions were put to and answers given by Grace Teall.

---

* We need not decide (had there been no testimony as to what occurred in the Brown home) whether plaintiff's lay proof of the ailment Dr. Durnell was treating did or did not meet such burden.

"Now, all that was disclosed to the doctor, from the testimony, doesn't appear in the application. Why it doesn't appear is a matter that is for the judgment of the examining doctor. He reached, apparently, a professional conclusion."

Granting that witnesses Brown and Burns apparently testified honestly as well as fully, we have no right to say, and thus the trial judge had no right to affirm, that their testimony must be accepted as a matter of law. Their testimony is opposed on this record by a writing. Such writing bears the attesting signatures of 2 deceased persons. It was received in evidence. Its content verity, like the credibility of witnesses Brown and Burns, was for the triers of fact. As was said by Justice COOLEY (in *Woodin* v. *Durfee,* 46 Mich 424, 427, where the trial judge had directed a verdict for the plaintiff):

"But the difficulty is that the facts were not conceded or beyond dispute: there was evidence of them which probably ought to have satisfied anyone to whom it was addressed; but evidence is for the jury, and the trial judge cannot draw conclusions for them."

Additional cases to the point are gathered in *Cebulak* v. *Lewis,* 320 Mich 710, 718-720 (5 ALR2d 186). We found recent occasion to follow them in *Tien* v. *Barkel,* 351 Mich 276.

Perhaps the best exposition of the rule governing right of a party to a jury verdict, regardless of the trial judge's view of witness credibility, appears in a decision of the court of appeals of the 5th circuit, handed down in 1933 (*Reid* v. *Maryland Casualty Co.* [CCA], 63 F2d 10). On that occasion, following motion for a directed verdict (by the defendant), the trial judge stated that "plaintiff impressed him as a man who would not tell the truth, but rather as one who colored his testimony to meet the exigencies

of his case, and that the court would be duty bound to and would set aside as unsupported by the evidence a verdict in his favor should the jury return one." A verdict was directed accordingly. The court of appeals said (pp 11, 12):

"This appeal presents the single question whether the district judge was right in his view, that since he disbelieved plaintiff's testimony, and had made his mind up that if plaintiff had a verdict he would not let it stand, he had the right to withdraw the case from the jury and himself determine the credibility of the witnesses.

"We think it beyond question that he was not. District judges are pronouncing no mere rigmarole when, in law cases, they charge jurors that they are the sole and exclusive judges of the credibility of the witnesses, and the weight to be given to their testimony. They are setting forth the very substance of a jury trial as guaranteed by the Seventh Amendment to the Constitution. Its purpose and aim 'is not to preserve mere matters of form and procedure, but substance of right. This requires that questions of fact in common-law actions shall be settled by a jury, and that the court shall not assume, directly or indirectly, to take from the jury or to itself such prerogative.' *Walker* v. *New Mexico & S. P. R. Co.,* 165 US 593, 596 (17 S Ct 421, 422, 41 L ed 837). It requires that except in cases where the evidence is such that reasonable minds can draw only one conclusion from it upon the issues, cases tried to a jury must go to a jury for their verdict. Especially is this so where, as here, the case turns upon the credibility of the witnesses."

*Second:* Since the case must go back for retrial, and since the questions posed thereby undoubtedly will arise on retrial, we turn to defendant's requested jury instructions Nos. 5 and 6 (see appendix, p 313). Such requests would, if granted, cast on the insured and her beneficiary, and not the in-

surer, the legal impact of error, if any, on the part of Dr. Cayley in filling out the pleaded answer to said question 13.

It is time to say with crisp and clear articulation that no matter what fine or large print an insurer of lives may choose to insert in its form of application, these cases of alleged medical fraud are to be considered and determined according to the same rules as are controlling in ordinary fraud cases. When it is shown that a participant—medic or not —in the obtaining or filling out of an application for life insurance is in fact an agent of the insurer, essential information shown as having been imparted to such agent will be imputed to the insurer according to rules given in *Pitcher* v. *World Insurance Company, supra; Turner* v. *Mutual Benefit H. & A. Assn.,* 316 Mich 6; *Serbinoff* v. *Wolverine Mutual Motor Insurance Co.,* 242 Mich 394; *Hawkeye Casualty Co.* v. *Holcomb,* 302 Mich 591, and like cases. This but follows lead of the statute (PA 1956, No 218, § 2220, p 542 [CLS 1956, § 500.2220, Stat Ann 1957 Rev § 24.12220]), which statute presently reads as follows:

"Any person who shall solicit an application for insurance upon the life of another shall, in any controversy between the insured or his beneficiary and the insurer issuing any policy upon such application, be regarded as the agent of the insurer and not the agent of the insured."

True, and as in the law of fraud generally, evidence tending to establish that the party accused of fraud has pertinently connived with the agent will, if believed by the trier or triers of fact, automatically vitiate such rule of imputation. But, absent evidence of such nature (none is present here), we by these presents now dispel all doubt that *Pitcher's* salutary rule applies generally to cases of

alleged medical fraud. That rule, briefly stated, is this: Where essential medical facts are fairly disclosed by the applicant to the insurer's agent, and the latter by unilateral mistake or design inserts erroneous or misleading answers in the application, the insurer will be taken as having received such disclosed information and will stand, fully estopped at our bar, from asserting that the erroneous or misleading answer or answers constitute fraud.

A moment's reflection will disclose impelling reason for steady adherence to this rule where life insurance is involved. As the national advertising of this very defendant tells us, the worth of a life policy usually means everything to those who are last to leave the cemetery. If premiums have been timely paid and clear proof of fraud is wanting, they should receive due benefit thereof. However, when the insured's turn to pay terminates as the insurer's covenant to make good arises, agents of the insurer are, as we observe in the reported cases, often around to testify that inducing representations, reflected in the application, were made by the decedent without disclosure and without qualification. The latter, however, has passed to his reward and is unable to aid his widow when that which both have relied upon is threatened in court. His side of the story —excepting in rare instance as at bar—is never heard in these cases. The advantage thus lies with the insurer which, having clamored to sell its product followed by collection of premiums, would deny responsibility on charge of fraud when (within the statutory period of contest) the life it has agreed to insure has become extinct. We should abstain from precedent which increases the odds and, if unwilling or fearful of doing so, should at least advise prospective applicants for life insurance that the applicatory inquisition should be conducted in the presence of one's own physician.

We must bear in judicial mind that soliciting and medical agents of the insurer are apt to have a financial (commission or fee) and, hence, primary interest in more and more policy sales. The temptation to "select" or "interpret" (as in *Pitcher* and apparently here) fact disclosures in favor of processing of an application is present, whether indulged or not, and thus the unrepresented applicant is as much exposed to a possible record of half truth as is the prospective witness whose extra-judicial statement is exclusively and privately taken by a partisan of one side of the coming lawsuit. Further, we have no right to assume that the average applicant for life insurance is possessed of such professional knowledge of medical terms as would, in the case of an applicant doctor or lawyer, provoke challenge of the interpretation placed upon his answers by the examining physician. We will not ascribe to him such knowledge nor require that he possess it as a condition precedent to invulnerable insurability. In short, when an insurer charges medical fraud after the accused becomes unavailable as a witness, it must prove the charge with clear and convincing force regardless of "It is agreed and understood" printed stipulations in the application as signed.

To recapitulate: The burden of proof respecting the pleaded issue of fraud did or did not shift to plaintiff depending on verity of the testimony given by witnesses Brown and Burns; the question of fraud was for the jury and not for the court, and defendant was not entitled to the mentioned instructions, which instructions, if given, would have cast the onus of error, if any, in recording of answers as contained in this application for life insurance, on plaintiff rather than defendant.

Reversed and remanded for new trial. Costs to defendant.

DETHMERS, C. J., and CARR, KELLY, SMITH, EDWARDS, and VOELKER, JJ., concurred.

KAVANAGH, J., took no part in the decision of this case.

### APPENDIX

(Defendant's requested instructions numbered 5 and 6.)

"I charge you that the physician who examined Grace Teall upon her application for insurance had no authority to bind the company by inserting false answers in the application, and even though you find from the evidence in this case that the examining physician disregarded answers given him by the said Grace Teall and knowingly inserted false answers to questions 11E and 13 in said application, plaintiff may not recover, and you must bring in a verdict of no cause for action."

"The insured, Grace Teall, was charged with knowledge of the provisions in her application and policy. The application states that no agent or medical examiner is authorized to waive, alter, modify or change any of the conditions or provisions of any application or policy or to accept risks or pass upon insurability. The policy states that no person except the president, a vice president, the secretary or an assistant secretary is authorized to waive, alter, modify or change any of the conditions or provisions of the policy. If the physician who examined her for said insurance refused to listen to or put down in said application the true answers to the questions therein and with the knowledge of the said Grace Teall inserted false answers in said application, it was her duty to bring these facts to the attention of the defendant. She did not do so and her failure, neglect or refusal to bring said matters to the attention of the defendant constituted a fraud against the defendant, and that the plaintiff may not recover in this case and your verdict must be no cause for action."