Zahi FAKHOURI, Plaintiff(s),

v.

**BANNER LIFE INSURANCE COMPANY, Defendant(s).**

No. 00–71211.

United States District Court,
E.D. Michigan,
Southern Division.

June 18, 2001.

752

Jason J. Liss, Farmington Hills, MI, for Zahi Fakhouri, plaintiffs.

Daniel N. Sharkey, Butzel, Long, Detroit, David H. Oermann, Butzel Long, Bloomfield Hills, MI, for Banner Life Insurance Company, defendants.

### OPINION & ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ROBERTS, District Judge.

#### I. *Introduction*

Presently before the Court is a dispute between Plaintiff (life insurance beneficia-ry) and Defendant (life insurance company) on Defendant's Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56. The question before the Court is whether misrepresentations made by the decedent materially affected the acceptance of risk by Defendant, thereby providing a basis for voiding the life insurance policy and denying benefits.

For the reasons stated below, Defendant's Motion for Summary Judgment is **GRANTED.**

#### II. *Background*

This case involves a claim by Plaintiff against Defendant for breach of a life insurance contract. Plaintiff, Zahi Fakhouri, is the beneficiary of a $250,000.00 life insurance policy issued by Defendant, Banner Life Insurance Company, on the life of his mother, Fadwa Fakhouri. The application contained several parts, including the initial questionnaire, a medical examination report and a supplemental Health Statement. The initial questionnaire was completed on or about October 22, 1996, the medical examiner's report was completed on or about November 26, 1996 and the supplemental Health Statement was purportedly signed by Fadwa Fakhouri on May 12, 1997 stating there had been no change in her health since November 26, 1996.

Ms. Fakhouri, the insured, died of Non–Hodgkin's Lymphoma on January 18, 1999. Plaintiff made a claim against the policy. Defendant's investigation of the claim revealed that contrary to the representations made in the May 12, 1997 Health Statement, her health had changed in late March 1997 when she was diagnosed with Non–Hodgkins Lymphoma. Moreover, Defendant discovered that Ms. Fakhouri had fractured her pelvis in late January, early February 1997. On the

basis of these discoveries, among others discussed below, Defendant denied Plaintiff's claim for life insurance benefits in a letter dated June 18, 1999 which specifically denied Plaintiff's claim because "the application for this policy contains material misrepresentations. It failed to disclose, among other things, that your mother had lymphoma." *(Exhibit I of Plaintiff's Response to Motion for Summary Judgment)* Plaintiff instituted this breach of contract lawsuit in an effort to receive the life insurance benefits Defendant has denied.

### III. *Standard of Review*

According to Fed.R.Civ.P. 56(c), when a party moves for summary judgment, "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Cox v. Kentucky Department of Transportation,* 53 F.3d 146, 149–150 (6th Cir.1995).

To meet this burden, the moving party may rely on any of the evidentiary sources listed in Rule 56(c) or may merely rely upon the failure of the nonmoving party to produce any evidence which would create a genuine dispute for the jury. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1477, 1478 (6th Cir.1989).

If the moving party satisfies its burden, then the burden of going forward shifts to the nonmoving party to produce evidence that results in a conflict of material fact to be resolved by a jury. In arriving at a resolution, the court must afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, if the evidence is insufficient to reasonably support a jury verdict in favor of the nonmoving party, the motion for summary judgment will be granted. *Street, supra,* 886 F.2d at 1477. Thus, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson, supra,* 477 U.S. at 252, 106 S.Ct. 2505.

Finally, the Sixth Circuit has concluded that, in the "new era" of summary judgments that has evolved from the teachings of the Supreme Court in *Anderson, Celotex,* and *Matsushita,* trial courts have been afforded considerably more discretion in evaluating the weight of the nonmoving party's evidence. *Street, supra,* 886 F.2d at 1480; *Anderson, supra; Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* If the record taken in its entirety could not convince a rational trier of fact to return a verdict in favor of the nonmoving party, the motion should be granted. *Id.*

### IV. *Applicable Law And Analysis*

The relevant statutory law in this matter is M.C.L. § 500.2218 which provides in pertinent part:

(1) Material misrepresentation; refusal to insure. No misrepresentation shall avoid any contract of insurance or defeat recovery thereunder unless the misrepresentation was material. No misrepresentation shall be deemed material unless knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make the contract.

(2) Definitions, representation, misrepresentation. A representation is a statement as to past or present fact, made to the insurer by or by the authority of the applicant for insurance or the prospective insured, at or before the making of the insurance contract as an inducement to the making thereof. A misrepresentation is a false representation, and the facts misrepresented are those facts which make the representation false.

## A. Argument of the Parties

Defendant contends that the decedent, Fadwa Fakhouri, concealed material medical and health information in the initial questionnaire of her life insurance application dated October 22, 1996 and in the Health Statement, which posed questions regarding any changes in her medical condition, dated May 12, 1997. Defendant argues that MCLA § 500.2218 permits an insurer to rescind a life insurance policy where misrepresentations materially affect the risks assumed by the insurer. Defendant further asserts that had it known of the facts which were misrepresented, then no policy would ever have been issued to Fadwa Fakhouri.

It is Plaintiff's contention that there are numerous questions of fact to be determined by the jury. First, Plaintiff does not dispute that certain medical conditions, diagnoses, medical treatment and physician appointments were omitted from Ms. Fakhouri's initial questionnaire [1]. However-

er, Plaintiff maintains that there exists a question of fact relative to the materiality of those withheld medical conditions and whether Defendant's lack of knowledge about these health issues affected its acceptance of risk.

Second, Plaintiff does not dispute that information about Ms. Fakhouri's fractured pelvis was omitted from her Health Statement as a changed circumstance in her medical condition. However, Plaintiff claims that there is a question of fact about the materiality of this condition because it is Plaintiff's contention that her fracture healed to the point of not affecting Defendant's risk of accepting Ms. Fakhouri as an insured.

Finally, Plaintiff does not dispute that Ms. Fakhouri's lymphoma diagnosis was not contained in the Health Statement as a changed circumstance of her medical condition. However, Plaintiff maintains that Ms. Fakhouri cannot be held responsible for that misrepresentation because the insurance agent, Al Javidi, forged her signature onto the Health Statement. Consequently, it was Mr. Javidi who made the representations in the Health Statement and not Ms. Fakhouri. Also, Plaintiff argues that Ms. Fakhouri was unaware of her lymphoma condition and therefore had no duty to disclose the information (i.e., in good faith there was non-disclosure as opposed to fraudulent intent to conceal information),

---

1. In response to the question of whether in the past 10 years Ms. Fakhouri had been treated for or diagnosed with having chronic headaches or recurring dizziness, she responded "No." However, Ms. Fakhouri's medical summary indicates that she had experienced headaches and/or dizziness in February 1989, October 1990, February 1993, March 15, 1993, March 23, 1993, March 24, 1995, March 14, 1996, and April 1996. In response to the question of whether Ms. Fakhouri had been treated for or diagnosed with

chest pain or heart palpitations in the last 10 years, she responded "No." However, her medical summary shows that she has been diagnosed with chest pain in March 1991, April 10, 1991, March 1992, February 1993, March 1993, April 1994, June 1995, October 1995 and August 1996. In response to whether or not she had been diagnosed or treated for diabetes, she responded "No." However, her medical summary indicates that she was being treated for diabetes, April 1996.

In response, Defendant contends: (1) all of the misrepresentations were material; (2) even if Mr. Javidi participated in a fraud, Plaintiff is still not entitled to collect on the policy; and (3) even if Ms. Fakhouri was unaware of her lymphoma condition, her good faith misrepresentation does not preclude Defendant from cancelling her life insurance policy if the misrepresentation materially affects Defendant's acceptance of the risk.

### B. Questions of Law & Fact

For purposes of deciding this Motion, this Court accepts the following as fact: (1) Al Javidi forged Ms. Fakhouri's signature on the May 12, 1997 Health Statement; (2) Ms. Fakhouri failed to document in the initial questionnaire portion of her life insurance application dated October 22, 1996 several aspects of her medical condition (i.e. past history of dizziness, chest pain, headaches, coughing, heart palpitations, diabetes hypertension, etc.); (3) Ms. Fakhouri failed to document in her Health Statement dated May 12, 1997 the fact that she fractured her pelvis in late January 1997, early February 1997; and (4) Ms. Fakhouri failed to document in her Health Statement that she was diagnosed with lymphoma.

As a matter of law, this Court can make the determination about whether the omission of Ms. Fakhouri's various medical conditions from her life insurance applica-tion are material. *Krajewski v. Western & Southern Life Ins. So.*, 241 Mich. 396, 217 N.W. 62 (1928).

### C. The Time Line

Defendant contends that the time in which medical information about Ms. Fakhouri was requested (i.e., from Ms. Fakhouri and from her doctors) and/or received by Defendant is relevant to the outcome of this Motion. Defendant's primary theory is that if Ms. Fakhouri had been completely truthful about all of her past medical maladies when she was initially asked on October 22, 1996, Defendant would have launched a full investigation into her medical history (i.e., seeking all of her medical records and health care information) During this investigation, the processing of Ms. Fakhouri's application would have been postponed indefinitely until all requested medical information was received, reviewed and evaluated [2].

When Defendant actually received Ms. Fakhouri's application on December 11, 1996, it requested an Attending Physician's Statement (APS) (i.e., from Dr. Ramsay Dass in this case) as it does in the normal course of processing a seemingly normal insurance application with no "medical red flags." An APS was authored on January 11, 1997, which revealed the fact that Ms. Fakhouri had suffered from hypertension, arthritis, diabetes and anxiety, but that she was on

---

**2.** James Landino, senior vice president of underwriting and chief underwriter with Defendant, testified at his deposition and in his affidavit that the investigative process would have included: (1) contacting the general agent's office to have the broker ask Ms. Fakhouri for the names of all of her treating physicians and hospitals where she was confined, so that her medical records could be obtained; (2) upon receiving all of her medical records, Defendant would have reviewed the medical records to determine whether or not any of her treating physicians had con-ducted sufficient testing to determine the underlying cause of her dizziness and chest pain in conjunction with her hypertension and diabetes; and (3) if Ms. Fakhouri's medical records were inconclusive as to the cause of her dizziness and chest pain in conjunction with her diabetes and hypertension, the Defendant would have postponed her application for insurance indefinitely until Ms. Fakhouri submitted herself for a complete physical examination and testing at her own expense to determine the cause of these medical conditions.

medication and these conditions were controlled. *(Exhibit G to Defendant's Motion for Summary Judgment).* However, this letter was not received by Defendant until April 25, 1997. Based upon the information in Dr. Dass' APS, Defendant issued the policy two days later on April 27, 1997.

Between December 11, 1996 and April 27, 1997, a series of events occurred upon which Defendant relies in bringing this Motion. On January 14, 1997, Ms. Fakhouri received abnormal blood test results after an examination by Dr. Dass. Apparently, Dr. Dass could not follow up on these results because Ms. Fakhouri left the state (i.e., New York) for a period of time. While in New York, in late January 1997, early February 1997 Ms. Fakhouri fell, fracturing her pelvis for which she was hospitalized for five (5) days in New York. Ms. Fakhouri returned to Michigan; and subsequently went to Beaumont Hospital complaining of pain in her hip on or about February 24, 1997. Three days later, Dr. Dass sends illegible medical records regarding Ms. Fakhouri's treatment to Defendant. On March 20, 1997 and March 24, 1997, Ms. Fakhouri is diagnosed with lymphoma. As previously stated, the APS is then received from Dr. Dass, which make no mention of the 1/14/97 abnormal blood work, the 1/97—2/97 pelvis fracture or the 3/97 lymphoma diagnosis.

On April 27, 1997, the policy is issued by Defendant without any knowledge of the preceding changes in Ms. Fakhouri's medical circumstances. It is Defendant's contention that it received the information about Ms. Fakhouri's January 14, 1997 blood work (however the results of the blood tests were not included) in the February 27, 1997 illegible records from Dr. Dass. However, Defendant was unaware that blood had been drawn because the records were illegible; and when Dr. Dass was asked to translate the records into a narrative form, he never did so. *(Exhibit F of Defendant's Motion for Summary Judgment).* Moreover, Defendant maintains that had it received a full medical disclosure on December 11, 1996, it would have certainly known by April 25, 1997 (the date Defendant received the APS from Dr. Dass, dated January 11, 1997) not only about the January 14, 1997 abnormal blood test results, but also about the January/February 1997 fractured pelvis and the March 1997 lymphoma diagnosis.

Mr. Landino testified that knowledge of Ms. Fakhouri's abnormal blood work and/or the pelvis fracture and/or the lymphoma would have resulted in the declination of policy issuance. *(Exhibit I of Defendant's Reply Brief).*

Plaintiff does not dispute the time line set forth above, but only takes issue with the alleged speculative nature of Defendant's argument (i.e., if Defendant had known this by a certain time, then that would have happened, etc.).

This Court finds that there is no need to speculate about when the medical records in this case would have been received. The fact is that the illegible medical records received on February 27, 1997 contained information regarding the 1/14/97 blood work being performed, (Exhibit J of Defendant's Motion for Summary Judgment). But Defendant remained uninformed about the results of the blood tests because the requested narrative by Dr. Dass was never sent to Defendant. Therefore, the question becomes, if Defendant had known about the abnormal blood tests, would Defendant have issued the policy?

As previously stated, Mr. Landino testified that had Ms. Fakhouri provided a truthful and full medical disclosure, the above detailed investigation would have been initiated. *(Exhibit I of Defendant's Reply Brief, ¶ 6 ).* Mr. Landino further

testified that the investigation would not have been concluded prior to January 14, 1997 (the date of the abnormal blood test diagnosis) because it is doubtful that they would have at a minimum received all of the medical records between December 17, 1996 (the date Defendant requested the records) and January 14, 1997 (the date of the abnormal blood work diagnosis). *Id at* ¶ *8.* Given the time it took to get Dr. Dass' medical records (i.e., 74 days); and Plaintiff's counsel's statement during oral argument that it took approximately 45 days to receive medical records when some records were ordered in 1999 in this matter, the record indicates that the investigation of Ms. Fakhouri's medical history would not have been completed before January 14, 1997, at which time (January 14, 1997) or some time thereafter, Defendant would have become aware of Ms. Fakhouri's abnormal blood tests, the hip fracture and possibly the lymphoma diagnosis, either one of which would have provided a basis for Defendant to decline issuing the policy. *Id. at* ¶ *10.*

### D. Materiality

 A false representation in an application for insurance which materially affects the acceptance of the risk entitles the insurer to cancellation as a matter of law. *General American Life Ins. Co., v. Wojciechowski,* 314 Mich. 275, 281, 22 N.W.2d 371 (1946). The insurer is entitled to information relative to the medical attention received by the insured, and failure to give this information in the application entitles the insurer to avoid honoring the policy. *Id.* If the misrepresentations materially affect the risk, it is not necessary to show that the misrepresentations were intentional. *Ranger Inc., v. Equitable Life As-*

*sur. Soc. of U.S.,* 196 F.2d 968 (6th Cir. 1952). Under Michigan law[3], material misrepresentation in an application for insurance will invalidate a policy, even though an untrue statement is made in good faith and in ignorance of its falsity. *Id.*

 This Court concludes as a matter of law, that had Defendant been aware of the true facts of Ms. Fakhouri's medical history, it would not have issued a policy of insurance. This Court is persuaded by the medical records, deposition testimony and affidavit testimony submitted that Ms. Fakhouri's concealment of her medical condition(s) directly impacted upon Defendant's acceptance of risk in this matter. *Metropolitan Life Insurance Co., v. Carter,* 252 Mich. 432, 233 N.W. 370 (1930).

Plaintiff may argue that minimally, Al Javidi's forgery of Ms. Fakhouri's signature should pose a question of fact. This Court finds that "[e]ven in the absence of any intent on the part of the insured to deceive the insurance company, the insurer may avoid the contract if a palpable fraud has been perpetrated upon it by its agent." *Henson v. John Hancock Mutual Life Insurance,* 261 Mich. 693, 697, 247 N.W. 102 (1933), *quoting, Hawk v. General American Life Insurance Company, Case No: 86–74718 (Exhibit 3 of Defendant's Reply Brief).* In addition:

> The fact that the agent knew of the false information or even caused the false information to be placed in the application will not estop the insurer from denying the claim. If the insurer can establish that a palpable fraud was perpetrated on it by its agent or that the insured connived with its agent, recovery will be barred.

---

**3.** When a federal court applies state law, "decisions of a state's highest court where applicable, must control over any conflicting opin-

ions of an intermediate state appellate court." *Cumberland & Ohio Co. v. First American Nat. Bank,* 936 F.2d 846 (6th cir.1991).

*Henson, supra, quoting, Hawk, supra.* Therefore, Plaintiff cannot simply rely upon the fact that Mr. Javidi may have taken it upon himself to misrepresent Ms. Fakhouri's medical condition as a means of establishing a material issue of fact. *Henson* suggests that even if there may be an issue of fact regarding the circumstances around an agent's misrepresentation on an insurance application, if Defendant in this case had known the facts regarding Ms. Fakhouri's lymphoma and as a result would not have issued a policy, then the concealment of that information materially affected the acceptance of the risk by Defendant; and Plaintiff should not recover [4].

### V. *Conclusion*

Since it is undisputed that Ms. Fakhouri failed to disclose the above referenced medical conditions; and this Court finds as a matter of law that these omissions materially affected the acceptance of the risk by Defendant, Plaintiff may not recover. Consequently, Defendant is entitled to judgment as a matter of law. Defendant's Motion for Summary Judgment [Doc. # 52–1], is therefore, **GRANTED.**

---

4. At oral argument, Plaintiff directed the Court's attention to *Pitcher v. World Ins. Co. of Omaha,* 327 Mich. 520, 42 N.W.2d 735 (1950) and *Hughes v. John Hancock Mut. Life Ins. Co.,* 351 Mich. 302, 88 N.W.2d 557 (1958) in an effort to persuade the Court not to rely upon *Henson,* when considering the forgery issue in this matter. Plaintiff's argument was two-fold. First, he stated that *Hughes* was decided after MCLA § 500.2218 was enacted. Second, he argued that these cases modified *Henson* holding that the insurer must bear the responsibility of any fraudulent acts of its agent in the absence of collusion between the agent and the insured. Neither of these cases are instructive. *Pitch-* er involved a situation where the insured gave truthful responses to the agent about various medical problems that existed, but the agent unilaterally determined that since these medical issues did not warrant hospitalization or confinement, it was not necessary to reveal these medical conditions on the application. In this case, it is undisputed that there was no truthful disclosure about the lymphoma diagnosis; and, whether the non-disclosure was in good faith or not is irrelevant since this Court finds as a matter of law that the issue is material. *Hughes* did not involve an alleged fraud issue involving an agent, but rather questions involving concealed information by the insured alone.