# STATE OF MICHIGAN

# COURT OF APPEALS

---

DAVID YOUNG,

        Plaintiff-Appellee,

v

MCBROOM INDUSTRIAL SERVICES,

        Defendant-Appellant,

and

INDUSTRIAL CONTROL REPAIR, INC.,

        Defendant,

and

LEHMAN & VALENTINO, P.C., and PAUL
VALENTINO,

        Intervening Plaintiffs-Appellees.

UNPUBLISHED
January 24, 2017

Nos. 327029 & 327854
Oakland Circuit Court
LC No. 2011-118822-CK

---

Before: GADOLA, P.J., and BORRELLO and STEPHENS, JJ.

PER CURIAM.

In these consolidated appeals, in Docket No. 327029, defendant McBroom Industrial Services (McBroom) appeals as of right a February 20, 2015, trial court order entered following a bench trial wherein the court entered a judgment in favor of plaintiff David Young (plaintiff) for $42,848.96 against McBroom. In Docket No. 327854, McBroom appeals as of right a June 9, 2015, order following the same bench trial wherein the court awarded intervening plaintiff, Lehman & Valentino, P.C. (Lehman), $92,550.08 against McBroom in connection with Lehman's representation of plaintiff in a related lawsuit involving plaintiff and McBroom, and defendant Industrial Control Repair, Inc. (ICR), and $16,022.22 in case evaluation sanctions. For the reasons set forth in this opinion, in Docket No. 327029 we affirm the trial court's order in favor of plaintiff, and in Docket No. 327854 we vacate the trial court's order and remand for further proceedings consistent with this opinion.

-1-

## A. BACKGROUND

In April 2009, plaintiff was employed at ICR. On May 1, 2009, plaintiff signed an employment offer and agreed to work for McBroom. McBroom and ICR are involved in the same industry. In June 2009, ICR sued McBroom alleging breach of plaintiff's non-compete agreement. ICR eventually added plaintiff to the suit.

In October 2009, McBroom terminated plaintiff's employment. On May 2, 2011, plaintiff filed a complaint alleging that McBroom was liable for breach of contract for failing to pay a "signing bonus" promised to plaintiff when he left his employment with ICR, and for failing to also provide plaintiff with an ownership interest in McBroom. In addition, plaintiff alleged that McBroom was responsible for plaintiff's attorney fees that plaintiff incurred in defending the ICR litigation. Plaintiff filed a jury-demand with his complaint. McBroom filed an answer, but did not file a jury-demand.

On August 15, 2011, Lehman moved to intervene pursuant to MCR 2.209(A)(3), alleging that both plaintiff and McBroom were liable for unpaid attorney fees related to Lehman's representation of plaintiff in the ICR litigation. Specifically, Lehman alleged that "part of the damages claimed in the [proceeding] are the attorney fees and costs owed to [Lehman] by Young and McBroom." Lehman argued that its claim "arises out of the same transaction being prosecuted in the case at bar," and that its interests would be impaired if not included in the action. Lehman argued that under MCR 2.209(A)(3) it had a right to intervene because it claimed "an interest relating to the property or transaction which is the subject of the action and is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest." On August 31, 2011, the trial court granted Lehman's motion to intervene.

On January 24, 2012, Lehman filed its complaint against plaintiff and McBroom, seeking $91,794.30 in unpaid attorney fees. Lehman did not file a jury demand with its intervening complaint and neither plaintiff nor McBroom filed a demand for a jury in response to the complaint. In its intervening complaint, Lehman sought recovery of attorney fees from McBroom for legal services associated with its representation of both plaintiff and McBroom in the ICR litigation.

Thereafter, the parties filed several motions and continued discovery. Then, on March 13, 2013, McBroom filed a motion to "confirm jury trial on intervening plaintiff's claims" apparently because Lehman asserted that its claims were not subject to a jury trial. In the motion, McBroom explained that plaintiff filed a jury demand when he filed his complaint. McBroom argued that it did not file a jury demand because it was entitled to rely on plaintiff's jury demand as to all of the issues in the case. McBroom argued that even though Lehman did not file a jury demand with its intervening complaint, McBroom was entitled to rely on plaintiff's jury demand with respect to both plaintiff's claims and Lehman's intervening claims because the claims involved the same issue—i.e. liability for the attorney fees in the ICR litigation. McBroom cited language in *Mink v Masters*, 204 Mich App 242, 246-247; 514 NW2d 235 (1994), wherein this Court held that "[i]f a timely demand for trial by jury is filed by one of the parties, all of the parties who are interested in the issues for which jury trial has been

demanded may rely on that demand and need not make an additional demand of their own" (quotation omitted).

The trial court held a hearing on March 27, 2013. After hearing argument from both parties, the trial court held that McBroom was not entitled to a jury trial on Lehman's intervening complaint. The court held that McBroom could not rely on plaintiff's jury demand, explaining: "I'm sorry, I think this is a different animal. It's an intervening complaint. That is - - none of the authority refers to that particular animal. The motion's denied." The court entered a written order on March 29, 2013, denying McBroom's motion to confirm a jury trial.

The case was scheduled for trial to commence on May 23, 2013, however, on that date, the court had a conflict and the trial date was adjourned to September 12, 2013. On September 4, 2013, McBroom moved to reschedule the trial for various reasons. In its motion, McBroom noted that the trial was a "bench trial."

The case proceeded to trial on March 13, 2014. On the first day of trial, the court and plaintiff's counsel engaged in the following exchange:

> *Trial Court*. And this is the trial, a bench trial.
>
> *Plaintiff's Counsel*. That is correct.

Counsel for McBroom was present, but did not object when plaintiff's counsel confirmed that the case was subject to a bench trial. Counsel for McBroom did not request that plaintiff's and Lehman's claims be bifurcated so that plaintiff's claims could be tried before a jury.

At the ensuing bench trial, plaintiff testified that before beginning his employment with McBroom in May 2009, he had been employed by ICR since 2002. Plaintiff presented documentation of his salary increases with ICR and a severance agreement with ICR whereby ICR promised to pay plaintiff the equivalent of three months of his salary and other benefits, such as a car allowance, if he left ICR. At the time he ended his employment with ICR, plaintiff made approximately $172,300 per year and had a monthly car allowance of $760.

Plaintiff testified that ICR and defendant had an ongoing business relationship; he had known McBroom's CEO, Richard McBroom and its president, Robert Campbell, for several years. Plaintiff testified that although ICR offered him another compensation package in April 2009, he was contacted by Richard McBroom and Campbell about working for McBroom. Plaintiff met with the two men several times and spoke with them on the phone. According to plaintiff, Richard McBroom told him that his sons did not wish to go into business with him and Richard McBroom asked plaintiff whether he wanted to ultimately take over the business. Richard McBroom wanted plaintiff to decide whether to leave ICR on short notice; according to plaintiff, as an incentive, Richard McBroom offered to pay plaintiff his ICR severance package as a "signing bonus" if plaintiff came to work for McBroom "within the week."

Plaintiff further testified that he and Richard McBroom negotiated a 25-percent discount of this severance amount in exchange for payment in a lump sum on plaintiff's hire date. However, plaintiff did not receive a lump-sum payment. Plaintiff explained that Richard McBroom promised that plaintiff would receive a 10-percent ownership interest on joining the

-3-

company to make up the difference between his ICR salary and his new salary. Plaintiff stated that, due to the timing of the offer, and the lack of a present valuation of the company, he and Richard McBroom agreed that plaintiff would receive 10-percent of the company's monthly net profit and use that to purchase his interest. Plaintiff stated that this portion of their agreement was never finalized due to the legal proceedings that ensued shortly thereafter.

Richard McBroom extended a written "employment offer" to plaintiff that plaintiff accepted on May 5, 2009. The offer contained a base salary of $2,711.54 a week, a car allowance of $500 a month, and $100,000 of life insurance. However, other items of his compensation, such as employer-provided health insurance, a flex-savings plan, an AFLAC policy, a 401(k) plan, and a company credit card, were not explicitly listed in the offer, which also did not reference the signing bonus. When asked why the signing bonus was not included in the written offer, plaintiff testified that he was in the middle of finishing off work for ICR, as well as preparing a large presentation for McBroom at the time. He stated that Richard McBroom came to him and told him, "Look I know we got a lot of other things to work out, but we need to get you on payroll. So this covers the general things and we'll get to the rest of it later."

In support of his signing bonus claim, plaintiff presented a check for $2,500 and a letter written by Michelle Weissert, McBroom's human resources manager. The notation on the check stub indicates that it is a "consulting fee" and the letter, dated September 4, 2009, provides as follows:

> Enclosed is check # 167101 for $2,500.00. In order [for] us keep us all square at year-end tax and audit time, we will need to set you up as a consultant vendor to pay you outside the payroll system and not collect payroll tax for these types of payments.
>
> Please complete the enclosed W-9 and return it to me in the enclosed envelope by September 15th.
>
> Thanks for your assistance.

Plaintiff testified that Richard McBroom told him that he planned to pay the signing bonus out of separate funds and not through the company. At one point, before Richard McBroom went on vacation, he told plaintiff that he planned to take care of it, had Michelle send plaintiff a $2,500 check, and stated that he would take care of the rest of it when he returned from vacation. Plaintiff understood that because the letter contemplated that "payments" were to be made, he thought this would be one of a number of payments of the signing bonus. Plaintiff admitted that he was going through a divorce and a bankruptcy at the time, and that he had to pay his ex-wife child support, but denied that this payment was a loan or a gift from Richard McBroom.

During both direct and cross-examination, plaintiff admitted that he had testified in his deposition in the ICR lawsuit that he did not have any additional agreements with Richard McBroom regarding his employment, and stated that he had lied during that deposition, at Richard McBroom's request. With respect to his alleged business ownership stake, plaintiff

admitted during cross-examination that he did not list this as an asset in his bankruptcy proceeding, nor did he list the severance payment he was allegedly owed.

McBroom's president, Robert Campbell, testified that there were no discussions about plaintiff having an ownership interest in the company, and they did not discuss giving plaintiff a signing bonus to join McBroom. Campbell did not know why the $2,500 check was issued to plaintiff.

Richard McBroom testified that an ICR employee told him that plaintiff intended to leave ICR, and that he then traveled to Indianapolis to meet with plaintiff. After the dinner, he contacted plaintiff with an offer of employment; he denied discussing a potential ownership interest with plaintiff because he did not know how plaintiff would do. Richard McBroom testified that he did not speak with plaintiff about a signing bonus comparable to the ICR severance benefit. He stated that it would not be his practice to offer employees such a specific form of compensation in an employment offer. Richard McBroom acknowledged, however, that defendant's employees also received other benefits not contained in an employment offer.

During cross-examination, Richard McBroom contradicted his earlier testimony by acknowledging that plaintiff had been given a company credit card, which was not listed on the offer of employment and was a benefit not routinely given to other employees. When asked about the $2,500 check to plaintiff, Richard McBroom testified that plaintiff was going through a divorce and bankruptcy and needed cash. Richard McBroom denied that the check was for monies owed to plaintiff. He stated that he had similarly helped other employees who needed money. When questioned about why the letter accompanying the check indicated "payments" in the plural, Richard McBroom indicated that it was a one-time deal and the plural was used as "proper English" in referring to other consulting payments made to other consultants; however, Richard McBroom acknowledged that plaintiff was not a consultant.

Both sides introduced extensive testimony concerning whether McBroom agreed to pay for plaintiff's attorney fees in the ICR litigation. After proofs and closing arguments, the trial court adjourned. Then, approximately one year later, the court entered a 47-page order finding that plaintiff was entitled to payment of a signing bonus in the amount of $42,848.96 from McBroom, but found that plaintiff was not entitled to a business interest in McBroom. With respect to the signing bonus, the court reasoned that plaintiff was more credible then Richard McBroom and the court noted the $2,500 check that McBroom paid to plaintiff. As to Lehman's claims, the court found that McBroom was liable for attorney fees associated with Lehman's representation of McBroom and plaintiff in the ICR litigation in the amount of $92,550.08. The court also awarded Lehman $16,022.22 in case evaluation sanctions.

On March 11, 2015, McBroom moved for a new trial or for relief from judgment. The court denied the motion for a new trial on April 3, 2015. This appeal ensued.

B. ANALYSIS

I. JURY TRIAL

McBroom argues that the trial court erred in holding a bench trial as opposed to a jury trial; McBroom contends that it was entitled to rely on plaintiff's jury demand.

Whether McBroom was entitled to a jury trial under the Court Rules involves a question of law that we review de novo. *CAM Const v Lake Edgewood Condominium Ass'n*, 465 Mich 549, 553; 640 NW2d 256 (2002).

"The right to a jury trial in a civil action is permissive, not absolute." *Marshall Lasser, PC v George*, 252 Mich App 104, 106; 651 NW2d 158 (2002). MCR 2.508 governs the procedure for making a jury demand in a civil case and it provides in relevant part as follows:

(A) Right Preserved. The right of trial by jury as declared by the constitution must be preserved to the parties inviolate.

(B) Demand for Jury.

(1) A party may demand a trial by jury of an issue as to which there is a right to trial by jury by filing a written demand for a jury trial within 28 days after the filing of the answer or a timely reply. A party may include the demand in a pleading if notice of the demand is included in the caption of the pleading. The jury fee provided by law must be paid at the time the demand is filed.

* * *

(C) Specifications of Issues.

(1) In a demand for jury trial, a party may specify the issues the party wishes so tried; otherwise, the party is deemed to have demanded trial by jury of all the issues so triable.

* * *

(D) Waiver; Withdrawal.

(1) A party who fails to file a demand or pay the jury fee as required by this rule waives trial by jury.

* * *

(3) *A demand for trial by jury may not be withdrawn without the consent, expressed in writing or on the record, of the parties* or their attorneys. [Emphasis Added.]

A party may rely on another party's demand for a jury trial; "where a plaintiff has filed a jury demand, the defendant need do nothing further to preserve its right to a trial by jury." *Mink*, 204 Mich App at 247. That is:

'If a timely demand for trial by jury is filed by one of the parties, *all of the parties who are interested in the issues for which jury trial has been demanded may rely on that demand and need not make an additional demand of their own.* This point

-6-

is emphasized by [MCR 2.508(D)] which provides that a demand for trial by jury may not be withdrawn without the consent, expressed in writing or on the record, *of all the parties to the action interested in that issue*.' [*Mink*, 204 Mich App at 246-247, quoting 3 Martin, Dean & Webster, Michigan Court Rules Practice, p 148 (emphasis added).]

To withdraw a jury demand, all of the parties must give consent "in writing or on the record." MCR 2.508(D)(3); *Mink*, 204 Mich App at 247.

In this case, in conjunction with filing his complaint, plaintiff filed a demand for a jury, requesting a jury trial on all of the issues. In his complaint, plaintiff alleged that McBroom was responsible for paying plaintiff's "litigation expenses" related to the ICR litigation. Plaintiff requested a jury trial on this issue as well as all of the other issues raised in the complaint. Similarly, in the intervening complaint, Lehman also alleged that McBroom was responsible for the same expenses related to the ICR litigation. Namely, the fees that Lehman incurred representing plaintiff in the ICR litigation. In the intervening complaint, Lehman emphasized that its claims were predicated on the same issues raised in plaintiff's complaint. Specifically, Lehman argued that "part of the damages claimed in the [proceeding] are the attorney fees and costs owed to [Lehman] by Young and McBroom." Lehman maintained that its claim "arises out of the same transaction being prosecuted in the case at bar," and that it had "an interest relating to the property or transaction which is the subject of the action []." Thus, the issue on which Lehman's claims were predicated was the same issue on which plaintiff had already requested a jury trial. Thus, even though McBroom did not file a separate jury demand following Lehman's intervening complaint, because McBroom was entitled to rely on plaintiff's jury demand as to the attorney fee issue, McBroom was entitled to a jury trial on that issue. Accordingly, the trial court erred in holding that Lehman's claims were not subject to a jury trial. *Mink*, 204 Mich App at 247.

Lehman argued that McBroom could not rely on plaintiff's jury demand to demand a jury trial on Lehman's claims because its claims were raised in an intervening complaint. However, when one party in a proceeding demands a trial by jury, "all of the parties *who are interested in the issues for which jury trial has been demanded* may rely on that demand and need not make an additional demand of their own." *Mink*, 204 Mich App at 246-247 (quotation marks omitted) (emphasis added). Here, the attorney fee issue was an issue for which a jury trial was demanded—i.e. by plaintiff. Because McBroom was a party that was interested in that issue, McBroom was entitled to rely on plaintiff's jury demand with respect to that issue and it is immaterial that Lehman filed an intervening complaint as opposed to a counter-complaint. *Id*.

In the lower court, Lehman argued that McBroom waived its right to a jury trial as to Lehman's claims. Lehman argued that at a pretrial conference all of the parties agreed that Lehman's claims were subject to a bench trial. Lehman is correct that a party may waive a right to a jury trial. "The[] court rules clearly indicate that an agreement to waive a previously demanded jury trial can be accomplished by the filing of a writing memorializing the agreement." *Marshall Lasser, PC*, 252 Mich App at 107. An agreement to waive a jury trial may also be implemented by clearly expressing the agreement "on the record," which "also encompasses an expression of an agreement implied by the conduct of the parties." *Id*.

In this case, with respect to Lehman's claims, McBroom did not clearly waive its right to a jury trial. While Lehman contended that the parties agreed off the record to a bench trial, this did not meet the requirements under the Court Rules. There was no written agreement and the parties did not enter an agreement "on the record." Furthermore, as to Lehman's claims, McBroom's conduct did not indicate a waiver. Rather, before trial, McBroom moved to confirm that the claims were subject to a jury trial, which the trial court denied. Thus, McBroom did not waive its right to a jury trial as to Lehman's claims.

However, although McBroom did not waive its right to a jury trial as to Lehman's claims, McBroom's conduct showed that it waived its right to a jury trial as to plaintiff's claims. After the trial court ruled that Lehman's claims were subject to a bench trial, McBroom did not attempt to preserve its right to bifurcate plaintiff's claims and have those claims tried before a jury. McBroom had the right to rely on plaintiff's jury demand as to all of the issues raised in plaintiff's complaint. However, McBroom did not demand that plaintiff's claims be tried before a jury. Rather, McBroom's actions show that it consented to have plaintiff's claims tried before the bench. Specifically, before trial commenced, McBroom moved to reschedule the trial date and in its motion, McBroom referred to the trial as a "bench trial." Then, on the first day of trial, when plaintiff's counsel affirmed to the court that the case was set for a bench trial, McBroom did not object or demand that plaintiff's claims be tried before a jury. Accordingly, the totality of the circumstances show that McBroom waived its right to a jury trial as to plaintiff's claims. *Marshall Lasser*, *PC*, 252 Mich App at 107-108. Moreover, to allow McBroom to claim that it had a right to a jury trial on plaintiff's claims when it did not assert that right during the proceedings would allow McBroom to harbor error as an appellate parachute. See *Bates Assoc, LLC v 132 Assoc., LLC,* 290 Mich App 52, 64; 799 NW2d 177 (2010) ("A party may not claim as error on appeal an issue that the party deemed proper in the trial court because doing so would permit the party to harbor error as an appellate parachute.").

In sum, McBroom was entitled to a jury trial in this case on all of the claims raised both by plaintiff and by Lehman. The trial court erred in holding that McBroom was not entitled to a jury trial on Lehman's claims. Therefore, we vacate the trial court's judgment in favor of Lehman in Docket No. 327854 and remand the case for a jury trial as to Lehman's claims.[1] However, because McBroom waived its right to a jury trial as to plaintiff's claims, the trial court did not err in proceeding with a bench trial as to those claims and plaintiff is not entitled to a new trial in Docket No. 327029.

## II. BREACH OF CONTRACT

Next, McBroom contends that the trial court erred in finding in favor of plaintiff on plaintiff's breach of contract claim. McBroom contends that the trial court erroneously relied on parol evidence to find that plaintiff was entitled to payment of a signing bonus.

---

[1] Given our resolution of this issue, we need not address McBroom's arguments regarding the statute of frauds, the doctrine of laches, case evaluation, insufficient evidence, and post-judgment relief with respect to Lehman's claims.

"[Q]uestions involving the proper interpretation of a contract or the legal effect of a contractual clause are . . . reviewed de novo." *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005). This Court also reviews de novo whether contract terms are ambiguous. *Rossow v Brentwood Farms Dev, Inc,* 251 Mich App 652, 658; 651 NW2d 458 (2002). However, the trial court's findings of fact are reviewed for clear error. *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 512; 667 NW2d 379 (2003).

"A party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014). "If the language of the contract is clear and unambiguous, it is to be construed according to its plain sense and meaning; but if it is ambiguous, testimony may be taken to explain the ambiguity." *New Amsterdam Cas Co v Sokolowski*, 374 Mich 340, 342; 132 NW2d 66 (1965). Unambiguous contract provisions are "subject to the parol evidence rule, which prohibits the use of extrinsic evidence to interpret unambiguous language within a document." *Shay v Aldrich*, 487 Mich 648, 667; 790 NW2d 629 (2010).

Ambiguity in written contracts is of two general types: patent and latent. A patent ambiguity is one "that clearly appears on the face of a document, arising from the language itself." *Black's Law Dictionary* (7th ed); see also *City of Grosse Pointe Park v Mich Muni Liability & Prop Pool*, 473 Mich 188, 197-198 (CAVANAGH, J.), 217 (YOUNG, J.); 702 NW2d 106 (2005). Accordingly, resort to extrinsic evidence is unnecessary to detect a patent ambiguity. *City of Grosse Pointe Park,* 473 Mich at 198 (CAVANAGH, J.). Contract language is patently ambiguous "[w]here the contract language is unclear or susceptible to multiple meanings[.]" *Port Huron Ed Ass'n, MEA/NEA v Port Huron Area Sch Dist*, 452 Mich 309, 323; 550 NW2d 228 (1996).

In contrast, "a latent ambiguity has been described as one that arises not upon the words of the will, deed or other instrument, as looked at in themselves, but upon those words when applied to the object or to the subject which they describe." *Shay*, 487 Mich at 671-672 (quotations omitted). Because "the detection of a latent ambiguity requires a consideration of factors outside the instrument itself, extrinsic evidence is obviously admissible to prove the existence of the ambiguity, as well as to resolve any ambiguity proven to exist." *McCarty v Mercury Metalcraft Co,* 372 Mich 567, 575; 127 NW2d 340 (1964). Thus, "where a latent ambiguity exists in a contract, extrinsic evidence is admissible to indicate the actual intent of the parties as an aid to the construction of the contract." *McCarty,* 372 Mich at 575.

In this case, the trial court did not err when it considered parol evidence to determine the actual extent of the employment agreement between plaintiff and McBroom. McBroom essentially argues that the written employment offer accepted by plaintiff was a fully integrated agreement. On its face, the employment offer is relatively basic. It is titled an employment "offer" rather than an employment "contract." It does not contain any ancillary language concerning, for example, choice of law, severability, or available remedies. Specifically with respect to the challenged provision, the "income structure" of the offer is latently ambiguous. This portion of the offer states that plaintiff was to receive a "Base Salary" of $2,711.54 a week. The use of the phrase "Base Salary" suggests that the parties contemplated or intended that plaintiff would be paid additional income, or through other forms of compensation. Indeed,

Richard McBroom admitted that several other items of compensation, such as insurance, a 401(k) plan, and the use of a company credit card were not contained in the written offer. And although Richard McBroom stated that all employees were offered these additional items of compensation, he contradicted his earlier testimony by acknowledging, on cross-examination, that plaintiff had been given a company credit card, which was not listed on the offer of employment and which was a benefit not routinely given to all other employees.

This testimony, as well as plaintiff's testimony and the existence of a $2,500 check written to plaintiff for compensation beyond his "Base Salary" could properly be used to determine whether a latent ambiguity existed concerning the amount of plaintiff's total compensation package, and more particularly, whether it included the promise of a signing bonus. *Shay*, 478 Mich at 667-668; *McCarty*, 372 Mich at 575. Moreover, the employment offer contained no merger clause or exclusivity clause representing that it reflects the whole of the parties' bargain. Compare, e.g., *UAW–GM Human Resource Ctr v KSL Recreation Corp*, 228 Mich App 486, 504; 579 NW2d 411 (1998) (the existence of a merger clause makes it unreasonable for a party to rely on earlier representations not included in the agreement).

Given the ambiguity in the employment offer, the trial court was required to determine the intent of the parties with regard to the alleged signing bonus. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 469; 663 NW2d 447 (2003). The trial court found that the parties intended that McBroom would pay plaintiff the signing bonus. In support of this finding, the court relied on plaintiff's testimony, the check issued by McBroom, and more specifically the accompanying letter discussing how "these types of payments" were to be handled in the future.

Contrary to McBroom's position, the trial court was not required to find that plaintiff was not credible based on its finding that he was not entitled to a business interest in McBroom. As the trier of fact, it was within the sole province of the trial court to resolve all issues of credibility. *Hughes v John Hancock Mut Life Ins Co*, 351 Mich 302, 308; 88 NW2d 557 (1958). The court was free to believe plaintiff when he testified that McBroom agreed to pay him a signing bonus, yet disbelieve him with respect to whether McBroom also agreed to grant him an ownership interest in the company. *Id*. Moreover, plaintiff's position with respect to the signing bonus was supported by the issuance of the check outside the payroll system, which, as the trial court noted, was otherwise inexplicable and also contained language indicating that it was intended to be one of a number of additional payments. In addition, the trial court discussed why it did not find Richard McBroom credible. The trial court did not clearly err with respect to its credibility findings.

In the alternative, McBroom argues that if plaintiff was entitled to the ICR severance payment, then he was only entitled to 75-percent of the payout based on plaintiff's testimony. Plaintiff testified that the agreement to pay only 75-percent of the $43,074.99 severance amount was conditioned on McBroom paying the discounted amount in a lump sum payment, which did not occur. Therefore, the testimony supported the trial court's calculation of the payout.

In sum, the trial court did not err when it found that plaintiff was entitled to payment of the "signing bonus" equivalent to a portion of the severance package he would have received as severance pay from ICR.

## III. CASE EVALUATION

Next, McBroom argues that the trial court erred in submitting the case to a second case evaluation after plaintiff's counsel failed to file a case evaluation summary and failed to appear at the first evaluation.

Case evaluation is governed by the Court Rules; the interpretation and application of court rules presents a question of law that we review de novo. *Fraser Trebilcock*, 497 Mich at 271. Under the Court Rules, a trial court has discretion to submit a civil case to case evaluation in non-tort cases; "we will disturb a trial court's exercise of discretion only if the result falls outside the range of principled outcomes." *Castro v Goulet*, 312 Mich App 1, 7, 877 NW2d 161 (2015).

MCR 2.403(A)(l) grants the court discretion to submit a civil case to case evaluation in non-tort cases. The rule provides that "[a] court may submit to case evaluation any civil action in which the relief sought is primarily money damages or division of property." Furthermore, with respect to whether multiple case evaluations may be conducted in a single case, MCR 2.410(C)(l), which governs all alternate dispute resolution proceedings, including case evaluations, see MCR 2.410(A)(2), states that "at any time, after consultation with the parties, the court may order that a case be submitted to an appropriate ADR process," and provides more specifically that "more than one such order may be entered in a case."

In the instant case, after the initial case evaluation, plaintiff filed a motion for a new case evaluation. At a hearing on August 8, 2012, counsel for plaintiff explained that he missed the July 23, 2012 evaluation because his mother died on July 16, 2012, and he had spent the weeks before the evaluation flying repeatedly to Florida to take care of her after she fell ill. The trial court, after noting that one of the mediators had apparently decided not to participate in the evaluation without plaintiff's counsel present, found that the evaluation could not properly be deemed "unanimous." While McBroom argued that plaintiff's counsel did not properly inform defendant of the loss of counsel's mother, the trial court appeared to find that this was excusable under the circumstances and it ordered a second case evaluation. Given the circumstances, we cannot conclude that the court's decision fell outside the range of "principled outcomes" such that it amounted to an abuse of discretion. *Castro v Goulet*, 312 Mich App at 7.

Moreover, McBroom cannot demonstrate that it was unduly prejudiced by the decision to allow a second case evaluation. Although McBroom was required to resubmit its materials to the new case evaluation panel, plaintiff was ordered to pay all the evaluation fees for the new panel. Furthermore, while defendant states now that it would have accepted the initial evaluation, it did not do so. Nor did it state during the motion hearing that it would have done so had the trial court not ordered a new evaluation. In sum, the trial court did not abuse its discretion in submitting the case to a second case evaluation.

## IV. NEW TRIAL/RELIEF FROM JUDGMENT

Lastly, McBroom argues that the trial court erred in denying its motion for new trial, amendment, or relief from judgment.

We review for an abuse of discretion a trial court's decision to grant or deny a motion for a new trial, *Shuler v Mich Physicians Mut Liability Co*, 260 Mich App 492, 509; 679 NW2d 106 (2004), or for relief from judgment, *Peterson v Auto–Owners Inc Co*, 274 Mich App 407, 412; 733 NW2d 413 (2007). Likewise, we review for an abuse of discretion a trial court's decision whether to grant a motion for remittitur. *Diamond v Witherspoon*, 265 Mich App 673, 692; 696 NW2d 770 (2005).

McBroom argues that for all of the issues raised above, the trial court abused its discretion in denying it post-judgment relief. This argument lacks merit. As discussed in the issues above, in Docket No. 327029, McBroom has failed to show that it is entitled to relief on any of the issues raised on appeal. Therefore, the trial court did not abuse its discretion when it denied McBroom's motion for a new trial or other post-judgment relief in Docket No. 327029.[2]

## V. CONCLUSION

In Docket No. 327029 we affirm the trial court's order entering a judgment in favor of plaintiff; in Docket No. 327854, we vacate the trial court's order entering a judgment in favor of Lehman in its entirety and remand for further proceedings consistent with this opinion. Plaintiff having prevailed in full in Docket No. 327029, may tax costs. MCR 7.219(A). No costs awarded in Docket No. 327854. MCR 7.219(A). We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Stephen L. Borrello
/s/ Cynthia Diane Stephens

---

[2] Given our resolution of the jury-trial issue, we need not address McBroom's argument that the trial court erred in denying post-judgment relief in Docket No. 327854.